Lois M. CROWDER, Plaintiff-Appellant,

v.

Arthur VANDENDEALE,
Defendant-Respondent.

No. 59917.

Supreme Court of Missouri,
En Banc.

April 14, 1978.

Don R. Lolli, Morris, Foust & Beckett, Kansas City, for plaintiff-appellant.

John Gregory Dorsey, Dorsey, Brannon & Dorsey, North Kansas City, for defendant-respondent.

FINCH, Judge.

This is an action by the present home owner against a contractor who built the house and sold it to plaintiff's vendors, the previous occupants. The petition alleged that shortly after purchasing the house plaintiff discovered that the front porch and steps were settling and separating from the house foundation, causing cracks in the brickwork and the foundation wall. It further alleged that it later developed that the foundation wall all along the south side of the house also was settling, resulting in cracks in the brickwork and foundation wall as well as a crack in the ground floor slab. In addition, the concrete driveway adjacent to the house settled and cracked.

The petition alleged that the damage to the house resulted from defendant's negligence in failing to conduct a proper analysis of existing soil conditions, improperly preparing and pouring footings for the foundation and, in general, failing to construct the house in a good, workmanlike manner. It sought to recover expenses incurred in repairing the house and driveway in the sum of $6,500.

The trial court sustained defendant's motion to dismiss for failure of the petition to state a claim upon which relief could be granted. On appeal the Missouri Court of Appeals, Kansas City District, reversed and remanded for trial. We ordered the case transferred on defendant's application and we now decide the case as though here on direct appeal.

The fundamental question presented is whether builders have a duty, enforceable by an action in tort, to protect prospective purchasers from damage consisting of deterioration or "loss of bargain." It should be noted that plaintiff does not seek recovery under the doctrine of implied warranty recognized in *Smith v. Old Warson Development Co.*, 479 S.W.2d 795 (Mo. banc 1975). Whether this additional remedy in tort sought by plaintiff should be established is a question of public policy. In determining that question, we should and do consider the policies which give rise to the incidents and limitations of the implied warranty action which we have established.

In *Old Warson* an original purchaser of a new home was allowed to recover from a builder-vendor for damages resulting from latent structural defects on the basis of a common law implied warranty of habitability[1] or quality. This was based on our determination that to such extent the existing rule of caveat emptor as applied to the sale of new houses should be relaxed. The court stated, 479 S.W.2d at 801: "Relaxing the caveat emptor rule in this limited area would not require a builder-vendor to construct a perfect house as the test would be one of reasonableness of quality. In addition, the duration of liability would be premised, also, on a standard of reasonableness."

The language of *Old Warson* has given rise to some uncertainty as to whether the action of implied warranty allowed in that case was grounded in contract or in tort. We recognize that in *Old Warson* this court quoted the earlier opinion by the Missouri Court of Appeals, St. Louis District,

---

1. In *O'Dell v. Custom Builders Corp.*, 560 S.W.2d 862 (Mo. banc 1978), this warranty is stated to be closely analogous to that found in § 400.2–314, RSMo 1969, which is therein termed "implied warranty of merchantability." This theory has rapidly gained widespread acceptance. At least 20 jurisdictions now recognize this doctrine. Many of the cases are collected in McNamara, *Implied Warranty in New House Construction Revisited*, 3 Real Est. L.J. 136 (1974).

which, based on language used in *Keener v. Dayton Electric Manufacturing Co.*, 445 S.W.2d 362 (Mo.1969), stated that the difference between "strict liability" and "implied warranty" would not be one of substance in Missouri because of the tort nature of the liability imposed.[2] *Keener* and the cases it relied on were for personal injury, including death, or property damage either to property other than the property sold or to the property sold where it was rendered useless by some violent occurrence. Those are situations where strict liability was found to be appropriate. The liability clearly is for tort in those instances, regardless of how labeled. However, after further consideration of the nature of recovery for deterioration of a house, as contrasted with the kind of recovery involved in *Keener* (damages for death caused by faulty product), we have concluded that the liability imposed for mere deterioration or loss of bargain resulting from latent structural defects is contractual, and that the recovery allowed in *Old Warson* is to be justified on that basis.

■ This conclusion is buttressed by several factors. First, the liability imposed in *Old Warson* clearly was predicated on the transaction of purchase rather than the conduct of the builder.[3] This is not true of negligence, which is inherently tied to the conduct of the builder.

■ Also implicitly recognized in our analysis in that case is the potential vitality of traditional contractual defenses under proper circumstances. For example, rather than reject outright the possibility of a valid disclaimer or modification under any set of facts, the provision in question was instead deemed ineffective under the facts presented. Thus, the *right* of the parties to make their own bargain as to economic risk was preserved even though the burden of demonstrating the *fact* of such a bargain, insofar as it is asserted that it varies implied warranty terms, remains great.[4] By this approach, boilerplate clauses, however worded, are rendered ineffective, thereby affording the consumer the desired protection without denying enforcement of what is in fact the intention of both parties.

A third factor supporting the conclusion that the liability involved where the purchaser seeks recovery from the builder for deterioration of the house purchased is contractual is the fact that in such instances it is desirable to require purchasers to give notice of the breach (the deterioration) and an opportunity to repair to the builder. Notice was not placed in issue in *Old Warson* but it is clear that the builder was given notice of the breach and an opportunity to repair. Likewise, in *O'Dell v. Custom Builders Corp., supra,* fn. 2, an implied warranty case, such notice was given. Notice is not required when recovery is sought on a tort theory. Permitting recovery in negligence would not afford builders the opportunity to make repairs.

The contractual nature of the theoretical underpinnings of the implied warranty recognized in *Old Warson* also implicitly limits the right of action to the first purchaser. Because the warranty is implied by virtue of the contemplated sale to the first pur-

2. This statement as to the nature of the liability imposed in *Old Warson* was repeated in *O'Dell v. Custom Builders Corp.*, 560 S.W.2d 862 (Mo. banc 1978).

3. This is not to say that liability is predicated on the sale contract. The warranty, from which liability arises, is an independently implied covenant arising by reason of the purchase which survives the deed. It is not merged in the deed because the warranty and the doctrine of merger are both creatures of policy. The doctrine of merger is drawn from the rule of caveat emptor which was relaxed to the extent of this implied warranty in *Old Warson*.

4. As indicated by analysis in *Old Warson*, one seeking the benefit of such a disclaimer must not only show a conspicuous provision which fully discloses the consequences of its inclusion but also that such was *in fact* the agreement reached. The heavy burden thus placed upon the builder is completely justified, for by his assertion of the disclaimer he is seeking to show that the buyer has relinquished protection afforded him by public policy. A knowing waiver of this protection will not be readily implied.

chaser and arises by reason of the purchase, it theoretically accrues in him. The practical aspects of the contractual defenses also lead to this conclusion. The first purchaser is the only one with whom the builder may negotiate an allocation of the risk. Furthermore, the builder is in a better position to know the condition of the home at the time of sale, and thus whether defects were latent. This is not true if the builder is sued by a subsequent vendee.

■ Analysis of the policy factors which led to our recognition of the implied warranty theory in *Old Warson* clearly demonstrates our focus on the *quality* of the home sold rather than the *conduct* in building it. The inquiry is directed to whether the home is of reasonable quality or reasonable fitness. If, by reason of some latent structural defect, it is not, the builder will be held responsible. In arriving at this standard, we indicated our concern that the structural quality of the home is not susceptible of discovery by the ordinary consumer who must rely on the builder's implicit representation that the home is fit for use as a residence. This assumed standard of quality is so fundamental to any sale of a new home that we engage in no fiction in declaring it to be an implied term. Unless it is otherwise clear from the bargain that the buyer and builder have reached an understanding to the contrary, we will presume that it is part of the bargain.

■ The foregoing stands in sharp contrast with negligence theory. In negligence, the focus is on both conduct and result. Generally, the standard of negligence is the requirement that the actor use ordinary care and skill. Yet this is particularly difficult to determine in the case of a completed home. The quality of new homes varies considerably. This is no particular evil standing alone because the variance in quality is substantially reflected in the price, thereby providing a broader market and enabling many to own their own homes. Purchasers are not ignorant of the more obvious variations in quality. Indeed, this largely accounts for the variation in price. Thus, there is little need to protect consumers from discoverable shortcuts in construction. However, as to latent structural defects in a completed home, where protection is needed, it may be difficult to pinpoint the exact cause of the defect. Often the only proof will be by inference from the result—a difficult problem where, as will often be the case, many parties may be involved in design, providing materials and construction.

A duty to use ordinary care and skill is not imposed in the abstract. It results from a conclusion that an interest entitled to protection will be damaged if such care is not exercised. Traditionally, interests which have been deemed entitled to protection in negligence have been related to *safety* or freedom from physical harm. Thus, where personal injury is threatened, a duty in negligence has been readily found. Property interests also have generally been found to merit protection from physical harm. However, where mere deterioration or loss of bargain is claimed, the concern is with a failure to meet some standard of *quality*. This standard of quality must be defined by reference to that which the parties have agreed upon. In the absence of some express agreement to the contrary, the standard of quality will be presumed to be that of the implied warranty term—reasonable fitness for use as a residence.

It is apparent from the foregoing that if recovery for this type of loss is allowed in negligence, the remedy would be dependent in every instance upon the implied warranty term of every new home sale recognized in *Old Warson*. Furthermore, the remedy would necessarily be more restrictive than implied warranty recovery because it would be available only in those instances where the defect could be attributed to a failure of the builder to use ordinary care. Fault is irrelevant in an action in implied warranty.[5]

---

**5.** "Negligence, knowledge or fault of the vendor or manufacturer is not required where recovery is sought for a defective condition under either implied warranty or strict liability." *Smith v. Old Warson Dev. Co.,* 479 S.W.2d 795, 798 (Mo. banc 1975).

It is clear that in tort actions seeking recovery for deterioration resulting from a failure to use ordinary care, there is no inherent requirement that defects be latent in order to support recovery as is required in implied warranty. Absent some artificial injection of such a condition into a traditional negligence action for failure to use ordinary care, such a limitation would arise only by reason of traditional negligence defenses such as assumption of the risk or contributory negligence which are not suitable for this purpose.

The conceivable situations where a right of recovery in negligence as well as in implied warranty would be of assistance to buyers are not persuasive that we should establish this second means of recovery. One such instance is when the statute of limitations for warranty has expired. The tort statute of limitations might well be longer if the time of injury is equated with the time of discovery of the defect.[6] However, the resultant uncertainty thus presented does not appear to be justified by any significant advancement of policy. The type of defect addressed in *Old Warson* may be expected to become manifest within the period established by the statute of limitations for warranty. It is certainly of sufficient length that we do not expect builders to gamble to the contrary.

A second situation where an additional remedy in negligence could be of assistance to buyers is the one involved in this case—a suit by a remote vendee. As discussed previously, such an action could not be maintained in implied warranty. Assuming *arguendo* that lack of privity would not bar recovery,[7] a tort duty would run directly to the subsequent vendee. However, the builder would have no opportunity to disclaim or otherwise allocate the economic risks with this purchaser because there would be no contractual relationship. Thus, the builder could be held liable in negligence to the second purchaser even if such liability was successfully disclaimed as to the first. This is but a further indication that tort theory is ill suited as a means of recovery for this type of loss.

As the foregoing analysis indicates, the reasoning of the numerous personal injury and property damage cases cited by plaintiff is not controlling here. The relatively few cases which have allowed recovery in negligence for the type of damage claimed here have relied heavily on such reasoning

---

6. We express no opinion on the potential impact of § 516.097, RSMo 1977 Supp. (cited by plaintiff), on this problem.

7. Although the point need not be determined in view of our disposition of this case, plaintiff urges that the modern trend is to hold a building contractor liable to all those who foreseeably may be injured by the house he built when he fails to disclose dangerous conditions known to him or when the work is negligently done. She contends that pursuant to such trend recovery by a second purchaser should be permitted in this case.

It is true that the modern trend in the cases is to hold a building contractor liable to third persons for personal injuries arising from negligent construction of a building. This is merely an application of traditional tort principles to enforce the public policy of preventing physical harm to others. As in most negligence or strict liability situations, the focus is not on privity between the injured person and the negligent party. Rather, it is on whether the injured person is a member of a foreseeable class who might be injured by the conduct. Annot. 25 A.L.R.3d 383, 397–409. However, we do not find, as plaintiff contends, an established trend to impose on builders a liability based on negligence to second and even subsequent purchasers for deterioration or loss of bargain. The only case cited by plaintiff which deals with and allows recovery in negligence by a second purchaser from the house builder for deterioration (in that case repairs necessitated by a leaky roof) is *Steinberg v. Coda Roberson Const. Co.,* 79 N.M. 123, 440 P.2d 798 (1968). We are not persuaded by that case. It places heavy reliance on cases involving recovery for personal injuries, but there is no discussion and analysis of the difference between claims for personal injury, and the type of injury there involved.

In the other cases cited by plaintiff which allow recovery in negligence for this type of loss by the original vendee, the status of a subsequent vendee was not presented or addressed. *See, e. g., Fisher v. Simon,* 15 Wis.2d 207, 112 N.W.2d 705 (1968); *Sabella v. Wisler,* 59 Cal.2d 21, 27 Cal.Rptr. 689, 377 P.2d 889 (1963). In one case, *McDonough v. Whalen,* 365 Mass. 506, 313 N.E.2d 435 (1974), the court expressly reserved judgment on the question. 313 N.E.2d at 439, n. 8.

without addressing what we perceive to be a fundamental difference in the type of damages involved. Nor have any of these decisions addressed our concerns about the failure of negligence theory to protect adequately the numerous policies and economic interests involved.

■ Our conclusion is that implied warranty recovery provides an adequate and appropriate remedy where a first purchaser seeks damages from a builder for deterioration as a result of latent structural defects in the house purchased and that a second theory of recovery based on failure to use ordinary care should not be authorized. It follows that the judgment of the trial court must be affirmed.

All concur.