Marilyn WARREN, Respondent,

v.

PARAGON TECHNOLOGIES GROUP,
INC. and Coast Federal Mortgage
Corp., Appellants.

No. 79539.

Supreme Court of Missouri,
En Banc.

Aug. 19, 1997.

Rehearing Denied Sept. 30, 1997.

845

Robert L. DeVoto, St. Louis, for appellants.

Heidi L. Leopold, William Taylor, Joseph M. Taylor, St. Louis, for respondent.

Robyn G. Fox, Catherine M. Vale, St. Louis, for amicus curiae.

BENTON, Judge.

Defendants Paragon Technologies Group, Inc. and Coast Federal Mortgage Corporation appeal the trial court's refusal to enforce a non-liability clause in a lease. The Court of Appeals transferred the case to this Court due to the general interest and importance of the question presented. *Mo.Const. art. V, sec. 10; Rule 83.02.* Reversed and remanded.

## I.

Plaintiff Marilyn Warren lived in an apartment complex managed by defendant Paragon and owned by defendant Coast Federal. Twice in January 1991, Warren slipped and fell on an icy sidewalk near her apartment.

In their amended answers, defendants alleged that the non-liability clause in the lease barred plaintiff's claim. Plaintiff filed no reply. At trial, the entire evidence on this affirmative defense was the introduction of the lease, and plaintiff's testimony that she signed it.

A jury found the defendants liable, awarding Warren $38,000. Following the denial of their motion for judgment notwithstanding the verdict, defendants appealed.

## II.

The circuit judge concluded that the non-liability clause was void as against public policy. This ruling—entered before the *Alack v. Vic Tanny International of Missouri, Inc.* decision—is erroneous. 923 S.W.2d 330, 337 (Mo. banc 1996). Releases of future negligence are not void as against public policy, though they are disfavored and strictly construed. *Id.* at 334. To release a party from its own future negligence, exculpatory language must be "clear, unambiguous, unmistakable, and conspicuous." *Id.* at 337. Although the validity of a non-liability clause is a question of law for the court, *id.*, the court can reach this question only after the parties comply with the applicable pleading and evidence requirements.

## III.

Defendants pled that the non-liability clause was a release. Release is an affirmative defense that must be pled in an answer. *Rule 55.08.* Once the defendants made this affirmative defense in their amended answers, the plaintiff was required to file a reply if she intended to assert an affirmative avoidance. *Rule 55.01.* "[A] reply should be filed when a plaintiff desires to avoid or affirmatively attack new and affirmative matter alleged in the answer." *Jaycox v. Brune,* 434 S.W.2d 539, 547 (Mo.1968). A reply is

> required to assert an avoidance, which is an affirmative defense to an affirmative defense. ... Rule 55.01 provides that "[a] defense constituting an affirmative avoidance to any matter alleged in a proceeding pleading must be pleaded." This sentence was added to the rule to conform with *Jaycox v. Brune.*

Mary Coffey, 15 *Missouri Practice* 295 (2d ed.1997), *citing* Rule 55.01 Committee Note (1974). The rationale of this pleading rule is clear: "it is necessary to the fair and orderly administration of justice to plead new matter affirmatively, and to give notice to the opposing party so that he or she may be prepared on that issue. It is ... incumbent upon plaintiff to raise the issue by timely objection." *Coffey*, 15 *Missouri Practice* at 369–70.

▉ Where a reply is required but not filed—and the defendant does not object—the case proceeds as if plaintiff made a general denial of the affirmative defense. *See Mahurin v. St. Luke's Hosp.*, 809 S.W.2d 418, 421 (Mo.App.1991). If the case is tried without a reply to the affirmative defense, on appeal the matter is treated as if a reply traversing the defense has been filed in accordance with the evidence. *Id.*

Plaintiff Warren was required to file a reply if she sought an avoidance of the affirmative defense. Pleading the unenforceability of a non-liability clause is asserting an avoidance. Warren never made this assertion by means of a reply. Therefore, this Court reviews the case as if Warren made a reply in accordance with the evidence at trial.

### IV.

▉ A defendant has the burden to prove all affirmative defenses. *Mochar Sales Co. v. Meyer*, 373 S.W.2d 911, 914 (Mo.1963). The key to the affirmative defense of release is that an agreement was, in fact, reached. *See Powers v. Kansas City Public Service Co.*, 334 Mo. 432, 66 S.W.2d 840, 845–46[5] (1933); *cf. Crowder v. Vandendeale*, 564 S.W.2d 879, 881 n. 4 (Mo. banc 1978).

▉ The evidence here established (1) a five legal-sized-page, single-spaced, form lease, and (2) plaintiff's signature. Parties are presumed to read what they sign. *See Farmland Industries, Inc. v. Bittner*, 920 S.W.2d 581, 584 (Mo.App.1996); *Mason v. Mason*, 873 S.W.2d 631, 634–35 (Mo.App. 1994); *Taylor & Martin, Inc. v. Hiland Dairy, Inc.*, 676 S.W.2d 859, 871–72 (Mo.App. 1984); *Mercantile Trust Co. v. Carp*, 648 S.W.2d 920, 924 (Mo.App.1983); *Wired Mu-*

*sic, Inc. v. Great River Steamboat Co.*, 554 S.W.2d 466, 469 (Mo.App.1977); *Sanger v. Yellow Cab Co., Inc.*, 486 S.W.2d 477, 481 (Mo.1972); *Wallach v. Joseph*, 420 S.W.2d 289, 294 (Mo.1967); *Lynch v. Webb City School District No. 92*, 418 S.W.2d 608, 617 (Mo.App.1967); *Bearden v. Countryside Casualty Company*, 352 S.W.2d 701, 707 (Mo. App.1961); *Haman v. Pyramid Life Ins. Co.*, 347 S.W.2d 449, 454 (Mo.App.1961); *Woolfolk v. Jack Kennedy Chevrolet Company*, 296 S.W.2d 511, 515 (Mo.App.1956); *Smith v. Githens*, 271 S.W.2d 374, 378 (Mo.App.1954); *Poe v. Illinois Cent. R. Co.*, 339 Mo. 1025, 99 S.W.2d 82, 89 (1936); *Yerxa, Andrews & Thurston v. Viviano*, 44 S.W.2d 98, 99 (Mo. 1931); *Brennecke v. Ganahl Lumber Co.*, 329 Mo. 341, 44 S.W.2d 627, 630 (1931). Plaintiff Warren was presumed to notice each provision of the lease she signed, which, in the absence of other evidence, demonstrates that an agreement was reached on the release. On this record, defendants met their burden on the affirmative defense, and judgment notwithstanding the verdict should have been granted. Reversal is required.

### V.

▉ An appellate court should reverse a plaintiff's verdict without remand only if it is persuaded that the plaintiff could not make a submissible case on retrial. *Moss v. National Super Markets, Inc.*, 781 S.W.2d 784, 786 (Mo. banc 1989). "The preference is for reversal and remand." *Id.* Because the trial here occurred before the *Alack* decision, Warren should have the opportunity to plead, or introduce evidence on, an avoidance of the defendants' affirmative defense. *See Dietz v. Humphreys*, 507 S.W.2d 389, 392 (Mo.1974).

### VI.

Since this Court is permitting a remand, the defendants' alternative ground for outright reversal must be addressed. Defendants contend that judgment notwithstanding the verdict should have been granted because they assumed no duty to clear snow and ice from the sidewalk where Warren slipped. Defendants do not dispute that "where a portion of the demised premises is reserved by the landlord for use in common by two or

more tenants, ... a duty is imposed ... to exercise ordinary care to keep that portion of the premises in a reasonably safe condition and is liable for damages for personal injuries to the tenant or a member of the tenant's family resulting from a failure to perform that duty." *Fitzpatrick v. Ford*, 372 S.W.2d 844, 849 (Mo.1963); *see also Aaron v. Havens*, 758 S.W.2d 446, 447 (Mo. banc 1988). Instead, defendants argue (and Warren does not dispute) that there is an exception to this general rule for natural accumulations of ice and snow that are general to the community. *See Ellis v. Jurea Apartments*, 875 S.W.2d 203, 208–09 (Mo.App. 1994); *Willis v. Springfield Gen. Osteopathic Hosp.*, 804 S.W.2d 416, 422 (Mo.App.1991); *Alexander v. American Lodging*, 786 S.W.2d 599, 601 (Mo.App.1990); *Maschoff v. Koedding*, 439 S.W.2d 234, 236 (Mo.App.1969); *Woodley v. Bush*, 272 S.W.2d 833, 834–35 (Mo.App.1954).

 Even under this exception, however, a landlord must make common premises safe from ice and snow where the landlord has, by agreement or course of conduct, obligated itself to do so. *Uptergrove v. Housing Authority of Lawson*, 935 S.W.2d 649, 655 (Mo.App.1996); *Maschoff*, 439 S.W.2d at 236. The apartment manager testified that it was the apartment's policy and practice to have maintenance employees remove ice and snow from all sidewalks around the complex. This testimony was sufficient to establish a duty to remove the ice and snow reasonably. Whether the efforts taken were reasonable was a factual question for the jury. The trial judge properly upheld the verdict on this ground.

## VII.

The judgment of the trial court is reversed and the case remanded for a new trial.

PRICE, LIMBAUGH, COVINGTON and HOLSTEIN, JJ., concur.

ROBERTSON, J., concurs in result in separate opinion filed.

WHITE, J., dissents in separate opinion filed.

ROBERTSON, Judge, concurring in result.

The principal opinion is quite correct in its decision to reverse the judgment in this case. For the reasons that follow, however, I would not remand for a new trial, but would remand with directions for the trial court to enter judgment for the defendants. Therefore, I concur in the result reached by the principal opinion.

Plaintiff's response and memorandum of law to defendants' joint motion for judgment notwithstanding the verdict and motion for new trial indicates that plaintiff responded to the defendant's affirmative defense prior to trial and offers five grounds in support of the trial court's decision to overrule the defendant's motion for summary judgment:

### CONTRACTUAL WAIVER

Defendants have also raised the defense issue of contractual avoidance, based on a clause contained in the lease agreement between the parties. This issue was previously submitted to the court on a Motion for Summary Judgment and Memorandum of Law. This motion of defendant's was denied (sic). Defendants again submitted the issue for consideration to the court on the date of trial, and same was denied.

█ Plaintiff contends that the clause contained in the lease agreement is void and unenforceable as the same is against Missouri Public Policy (sic)....

█ This language [of the exculpatory clause] purports to be a release from liability, [sic] however, there can be no release unless there exists at the time claimed a bona fide controversy concerning defendant's legal liability on some issue in dispute between the parties....

At the time the parties executed the lease agreement, there was no controversy or dispute in existence regarding any injury or damage to plaintiff, and therefore, said clause should be deemed void. [3] Furthermore, ... the clause fails due to lack of consideration.

█ Additionally, the language [of the exculpatory clause] ... is ... "boiler plate" language intended for general application, and is thus wholly ineffective to

immunize defendant from liability.... The intent of the parties in executing the lease was for the purposes of obtaining a residence and paying rent for same. A non-liability clause buried in small print on page 3 of a lease agreement does not represent the intention of the parties to a residential lease agreement.

The fifth argument claims that even if exculpatory lease agreements are valid in commercial settings, they are invalid in a residential setting.

Significantly, the plaintiff did not raise any factual or legal argument that would bring her under the rule announced in *Alack v. Vic Tanny International of Missouri, Inc.*, 923 S.W.2d 330 (Mo. banc 1996): she did not claim that the language of the exculpatory clause was ambiguous or that she failed to notice the language of the clause in the contract she is presumed to have read before she signed it. Indeed, under *Alack*, the language in the exculpatory clause here is legally sufficient.

The only possible issue remaining on remand under *Alack* is the dubiously-grounded issue of conspicuous printing *Alack* mentions. I would not recognize *Alack's* conspicuous requirement, but even if one assumes that *Alack* speaks to this point with authority, on this issue the plaintiff must assert both that the type-face was not sufficiently alerting *and* that she did not read the contract. (*Alack*, 923 S.W.2d at 340, Limbaugh, J., dissenting.)

Although the plaintiff's traverse of the defendants' affirmative defense did not appear in the form suggested by Rule 55.01, it is beyond cavil that the parties and the trial court knew the nature of both parties' claims on the issues surrounding the exculpatory clause. Plaintiff's papers make broad claims to defeat the exculpatory clause. They fail to claim, however, that plaintiff did not know of the exculpatory clause. The most her papers say on that subject is that she did not believe the parties intended to waive the defendants'

liability as part of a residential lease agreement.

I comprehend no reason on the record in this case that supports permitting the plaintiff another trial. Plaintiff had a full opportunity to respond to the affirmative defense. She did so, obviously raising every legal and factual claim to which her imagination entitled her. Her papers make no claim that she failed to read the contract or that in reading it, she failed to see the bold-type reading "NON–LIABILITY" that preceded the paragraph containing the exculpatory clause. Being fully apprised of the affirmative defense and aware through summary judgment motions of the need to traverse the affirmative defense, plaintiff could and should have made this claim at the first trial. She did not. Under these circumstances, the principal opinion invites convenient prevarication as the sole basis for a new trial.

WHITE, Judge, concurring in part and dissenting in part.

In *Alack v. Vic Tanny, Int'l*, we held that attempts to avoid responsibility for one's future negligent acts by use of contractual releases are disfavored on public policy grounds.[1] Although *Alack* did not hold such releases void in all cases, it required those seeking to enforce them—as with other "extraordinary methods of shifting ... risk"—to meet an " 'exacting standard' " in order to succeed.[2] The clause at issue in this case was not conspicuous as *Alack* requires. I would affirm.

In *Alack* we held that "the best policy is to follow our previous decisions and those of other states that require clear, unambiguous, unmistakable, and conspicuous language" in releases from future negligence.[3] These devices are disfavored because "[o]ur traditional notions of justice are so fault-based that most people might not expect such a relationship to be altered...."[4] "There must be no doubt that a reasonable person agreeing to an exculpatory clause actually understands

---

1. 923 S.W.2d 330, 334 (Mo. banc 1996).

2. *Id.* (quoting *Gross v. Sweet*, 49 N.Y.2d 102, 424 N.Y.S.2d 365, 400 N.E.2d 306, 309 (1979)).

3. *Alack*, 923 S.W.2d at 337.

4. *Id.*

what future claims he or she is waiving."[5] This Court has never before held that parties are conclusively presumed to have read and understood every term of a contract—no matter how inconspicuous or unexpected. In fact the opposite has been the case. Both this Court and the legislature have sought to protect parties from potentially abusive terms by requiring that certain contract terms be conspicuous. In their disfavored but occasionally allowed status, releases from future negligence are like waivers of implied warranties. The Uniform Commercial Code allows the implied warranty of merchantability to be disclaimed only when the disclaimer specifically mentions "merchantability" and is conspicuous.[6] Under common law principles, this Court has established a similar standard to govern attempts to disclaim the implied warranty of habitability.[7] While recognizing that "the right of the parties to make their own bargain as to economic risk" was a valid concern, the Court held that "the burden of demonstrating the fact of such a bargain ... remains great."[8] "By this approach, boilerplate clauses, however worded, are rendered ineffective, thereby affording the consumer the desired protection without denying enforcement of what is in fact the intention of both parties."[9] "[O]ne seeking the benefit of such a disclaimer must not only show a conspicuous provision which fully discloses the consequences of its inclusion but also that such was in fact the agreement reached."[10] "The heavy burden thus placed upon the [defendant] is completely justified, for by his assertion of the disclaimer he is seeking to show that the [plaintiff] has relinquished protection afforded him by public policy."[11] In order to interpose this exculpatory clause as a defense, Paragon bears the burden of showing that it is conspicuous, which it has not done.

Even if the Court is to reverse its previous policy and place the burden on Ms. Warren to prove that the term at issue was inconspicuous, remand will serve no purpose since this question is entirely one of law. Conspicuousness is a well-recognized concept in commercial law. Under the Uniform Commercial Code, "A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it"; whether a term is conspicuous is a legal question.[12] Methods for making a provision conspicuous include, but are not limited to, rendering language in all capital letters, in larger type, or in other contrasting type or color.[13] The clause at issue here cannot be said to be conspicuous. The relevant provision was the twentieth paragraph of thirty-three in Ms. Warren's lease. It was located on the bottom of the second full, legal-sized page of single-spaced type between paragraphs entitled "Destruction or Condemnation of Leased Premises" and "Lease Subordination." While it is true that all terms of a contract are important and, obviously, not all of them can be emphasized, the holding of *Alack* is that a release from liability for negligent conduct is so far outside the customary expectations of a consumer that it must be specially highlighted in order to be enforced against him or her. When it sought to emphasize a particular point, the lease had no trouble doing so. Certain terms related to the amount of rent, the security deposit, and to pets are rendered entirely in capital letters. In fact, the issue of pets is so crucial that it is dealt with in a separate "Pet Responsibility Addendum" that, apparently, must be executed even if no pet is to reside in the apartment. The exculpatory language in this contract was not

5. *Id.* at 337–38.

6. Section 400.2–316(2), RSMo 1994.

7. *Crowder v. Vandendeale*, 564 S.W.2d 879, 881 (Mo. banc 1978).

8. *Id.*

9. *Id.*

10. *Id.*

11. *Id.* n. 4.

12. Section 400.1–201(10), RSMo 1994. While the U.C.C. does not govern this contract, other courts examining the question of the conspicuousness of exculpatory clauses have adopted the U.C.C. definition as authoritative. *See, e.g., Dresser Indus. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 509–511 (Tex.1993).

13. Section 400.1–201(10), RSMo 1994.

sufficiently conspicuous to alert a reasonable consumer of the extraordinary nature of the rights relinquished. Thus, the clause was inconspicuous as a matter of law and the trial court did not err in refusing to enforce it as violating public policy. The contract is before us. The only disputed question is one of law. Remanding the case for a full retrial merely to require the plaintiff to plead that the clause is inconspicuous is the height of artificial technicality.

Although I concur in part VI of the principal opinion, I respectfully dissent from the remainder. I would affirm the judgment of the trial court.