**AUTRY MORLAN CHEVROLET, CADILLAC, INC., Appellant,**

v.

**RJF AGENCIES, INC., U.S. Bancorp, Inc., and Frank Reahr, Respondents.**

No. SD 30329.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 7, 2010.

Motion for Rehearing or Rehearing En Banc or Transfer to Supreme Court Denied Dec. 29, 2010.

Application for Transfer Denied March 29, 2011.

Bradley D. Jarrell, Dexter, MO, for Appellant.

Sanford Goffstein and Lori R. Koch of St. Louis, MO, for Respondent RJF Agencies, Inc.

Bruce C. Oetter and Elizabeth C. Carver, St. Louis, MO, and James E. Spain, Poplar, Bluff, MO, for Respondents Bancorp and Reahr.

WILLIAM W. FRANCIS, JR., Judge.

This is an appeal by Autry Morlan Chevrolet, Cadillac, Inc. ("Morlan"), from the trial court's entry of summary judgment against Morlan in favor of Respondents RJF Agencies, Inc. ("RJF"), U.S. Bancorp, Inc. ("Bancorp"),[1] and Frank Reahr ("Reahr"). We reverse and remand this matter to the trial court for further proceedings.

## Factual and Procedural History

Morlan filed a two-count petition alleging "damages for negligence" against RJF, Bancorp and Reahr, and "tortious interference with a business relationship" against Bancorp only.[2] A brief history of the relationship among the parties is required.

Morlan operated a Chevrolet and Cadillac automobile dealership in Dexter, Missouri. Bancorp had a branch in Dexter and provided floor-plan financing to automobile dealers. By this financing, Bancorp received a security interest in Morlan's property, including the automobiles on its lot. Bancorp's financing agreements required dealers to maintain insurance on their inventory on terms satisfactory to Bancorp. Implicit in this requirement is Bancorp's ability to accept or reject insurance coverage on the inventory. Reahr is a Bancorp employee and the relationship manager who handled negotiations and communications between Morlan and Bancorp.

Bancorp learned that RJF, an insurance broker, had an insurance program tailored to meet the insurance needs of automobile dealerships. RJF's program offered an aggregate weather deductible, which would limit a dealer's financial exposure in the event of a catastrophic, weather-related claim. This aggregate weather deductible program, limited to automobile dealerships, was not available on the open market. Bancorp had entered into an arrangement with RJF to make the insurance program available to dealers to whom Bancorp provided financing in order to avoid assembling and selling the complex plans itself. Bancorp agreed with RJF to acquire a master insurance policy with Lloyd's of London through which dealers obtaining floor-plan financing from Bancorp could elect to obtain insurance as additional insureds. That coverage, available exclusively through RJF as broker, was handled under the master insurance policy covering a number of dealers rather than individual policies in order to offer dealerships a volume rate at a lower premium.

In August 2005, Bancorp presented Morlan with a "Financial Services Proposal," proposing a "financial partnership with [Bancorp]" and setting forth terms by which it would provide financing with respect to their new and used vehicles. It further described Bancorp's "comprehensive proposal for financial services" which, in part, specifically recognized Morlan's need for insurance with deductible expo-

1. Bancorp and Reahr declare in their motion for summary judgment/statement of uncontroverted facts, that U.S. Bancorp, Inc., is not correctly named as a defendant, but rather the correct defendant is "U.S. Bank National Association ('U.S. Bank'), which is the entity that entered into the Dealer Loan and Security Agreement and otherwise dealt with [Morlan]." They also point out the correct name of the bank is irrelevant and does not raise a genuine issue of material fact. Therefore, our reference to Bancorp is inclusive of U.S. Bank and U.S. Bank National Association.

2. Morlan does not raise in its appeal any error by the trial court in granting summary judgment on its second count alleging tortious interference with business relations. As a result, this opinion will not address that part of the trial court's judgment.

sure limits in the event of catastrophic weather conditions, and refers to RJF's exclusive program as a proposed solution.

On November 7, 2005, Bancorp and Morlan entered into a "Dealer Loan and Security Agreement" under which Bancorp agreed to provide a flooring line of credit up to a maximum of $7,000,000, to finance vehicles owned and offered for sale on Morlan's lot. As a part of this agreement, Morlan agreed to maintain certain insurance, including casualty policies insuring Bancorp's collateral, and to designate Bancorp as a loss payee on the casualty policies. An additional part of the agreement immediately appointed any officer of Bancorp as Morlan's attorney-in-fact effective in the event of Morlan's default on payment. RJF subsequently provided Morlan with details relating to the insurance program, as well as an "Application/Schedule of Insured Automobiles," which Morlan completed on November 16, 2005.

On November 21, 2005, RJF forwarded to Morlan an insurance proposal—"Dealers Open Lot Insurance and Aggregate Weather Deductible Indication" (the "RJF Proposal"). The RJF Proposal highlighted the advantages of its strategically designed service team, "a team of skilled individuals to service each account," where "[e]ach team member brings particular skills and specialties" to the account. RJF's Proposal also referenced the "RJF-[Bancorp] program" and noted in relevant part that: "This insurance program is a master policy issued to [Bancorp]. Insured must have financing through [Bancorp] in order to participate in this insurance program." The parties agree it is only by its special relationship with Bancorp that Morlan was able to participate in this program.

The base policy offered in the RJF Proposal had a deductible of $1,000 per vehicle, with no aggregate, for the perils of catastrophic weather conditions. The RJF Proposal also outlined the "Aggregate Weather Deductible Option" noting: "The Aggregate Deductible is based on the number of *total* vehicles on the lot location at the time of the loss; not the number of damaged vehicles. *The Minimum Aggregate Deductible is $35,000.*" (Emphasis in original.)

On November 22, 2005, Autry Morlan signed the last page of the RJF Proposal—the "Client Authorization to Bind Coverage." RJF provided Morlan with an "Evidence of Insurance" certificate dated November 23, 2005, stating: "Coverage is effected under [Bancorp] Deductible Buyback Risk Reference NO365660U with Underwriters at Lloyd's[ ][of] London 100%." The certificate stated the coverage was "[e]ffective from: November 23, 2005 to February 1, 2006 both days at 12:01 a.m. E.S.T."

On January 10, 2006, RJF advised Morlan by facsimile that: "[Bancorp] is in the process of negotiating their Buy Back/weather retention with [Lloyd's] of London. It renews on February 1, 2006. There is a possibility [Bancorp] may not renew the policy."

In mid-January 2006, RJF notified Bancorp that the cost of the aggregate weather deductible was going to increase significantly, that the minimum deductible amount would be substantially increased, and asked Bancorp to decide whether it would renew the coverage when the master insurance policy expired on February 1, 2006. Due to the increase in both the premium and the minimum deductible amount, Bancorp notified RJF on January 27, 2006, it would not renew the aggregate weather deductible. The base coverage issued by Lloyd's of London remained in full force and effect. RJF arranged for the aggregate weather deductible to be extended until March 1, 2006.

On February 17, 2006, RJF notified Morlan, by letter and facsimile, of Bancorp's decision not to renew the aggregate weather deductible effective March 1, 2006. RJF's letter advised Morlan:

Your primary policy with [Bancorp] is still in force and will stay in force unless you give us a 60 day notice to cancel. The weather aggregate provided a cap in the event of a storm. The primary policy provides coverage for weather perils with a deductible per unit and no aggregate.

Morlan's representatives denied receipt of the facsimile, but RJF submitted proof to the contrary.

Paul Novotny, the "National Account and Product Manager RV and Marine in the Dealer Commercial Services Division of [Bancorp]," stated in an affidavit in support of Bancorp's motion for summary judgment that RJF advised him they had obtained and proposed to Morlan an alternative insurance arrangement with an aggregate weather deductible to be in place when the Lloyd's of London deductible expired.

On March 9, 2006 and April 1, 2006, hail storms struck and a number of vehicles on Morlan's lot sustained damage in an estimated amount of $607,591.29. Autry Morlan testified the vehicles were not repaired as required to collect insurance for the loss: "I couldn't repair five hundred vehicles.... I elected to spend a hundred thousand dollars and advertise the cars as storm damaged vehicles and create as much sales volume as possible...." The vehicles were sold "as is." Morlan rejected an offer of $151,000 from the insurance company for the storm damage. Morlan's petition sought damages for all of the expenses sustained and incurred by not having an aggregate weather deductible in place, including attorney's fees and punitive damages. In his deposition, Autry

Morlan was unable to quantify "the difference between the price [the vehicles] were sold for and the price they would have sold for undamaged." Mr. Morlan also explained the vice president of Bancorp told him he would have an aggregate weather deductible, they were taking care of it, and he should not worry.

Pertinent portions of the allegations in Morlan's petition are:

1. Bancorp owed a fiduciary duty to protect Morlan's interests;

2. As a co-policy holder of the insurance that was in place, Bancorp had a duty to keep property insurance in place;

3. RJF, as an insurance broker/agent, owed a duty to Morlan to use diligence, skill and reasonable care to acquire proper coverage;

4. RJF breached its duties as an insurance broker/agent;

5. Reahr, as the relationship manager who conducted business with Morlan, had a fiduciary duty and an obligation to notify Morlan of any problems with the insurance coverage;

6. That a policy with an aggregate weather deductible that would cap the total amount of deductible at $35,000, for vehicles damaged by hail and storms was put into effect;

7. That Morlan had an expectation the insurance policy would remain in effect and the aggregate weather deductible would remain in place; and

8. That Bancorp decided unilaterally to discontinue or not renew the aggregate weather deductible without Morlan's consent or knowledge.

On October 7, 2008, Bancorp and Reahr filed their motion for summary judgment on both counts I and II, along with their statement of uncontroverted material facts, supporting memorandum, and exhib-

its. With respect to count I, Bancorp and Reahr argued that the damages sought by Morlan are purely economic since the damages are the difference in insurance recovery—with and without the aggregate weather insurance coverage—and therefore, are barred under Missouri's economic loss doctrine, which denies recovery for any loss that is purely economic. On December 1, 2008, RJF filed its motion for summary judgment asserting a similar argument.

In response to Bancorp and Reahr's motion for summary judgment, Morlan filed its answer admitting certain paragraphs of the motion and added statements that the "information" contained in them was "incomplete." Morlan denied other paragraphs and asserted Bancorp and Reahr were not entitled to summary judgment on count I "because the damages sought by [Morlan], are not purely economic in nature, and are not barred by the economic loss doctrine, as the economic loss doctrine does not apply in the case at hand." Morlan also filed its response to Bancorp and Reahr's statement of uncontroverted material facts. Morlan did not file any other response, such as a memorandum or suggestions in opposition to Bancorp and Reahr's summary judgment motion.

Morlan's response admitted most of the facts set forth in Bancorp and Reahr's statement of uncontroverted material facts. Portions of Morlan's response to parts of Bancorp and Reahr's statements of fact were that it was "without sufficient information to admit or deny [the] statement...." Other statements Morlan denied[3] in whole or in part, but the statements did not "support each denial with specific references to the discovery, exhibits or affidavits that demonstrate specific facts showing there is a genuine issue for trial" as directed by Rule 74.04(c)(2).[4] After responding to each of Bancorp and Reahr's factual statements, Morlan listed three purported "Additional Material Facts Remain [sic] in Dispute" but cited no evidentiary support. Morlan did not attach any "discovery, exhibits, or affidavits" to its answer or its response. In their response, Bancorp and Reahr denied each of the three asserted facts, and cited exhibits they had filed with their statement of uncontroverted material facts.

On October 19, 2009, the trial court heard argument on Respondents' respective motions for summary judgment. The trial court granted both motions. On October 23, 2009, the trial court entered separate orders granting each motion in favor of Respondents and against Appellant. In its order granting Bancorp and Reahr's summary judgment, the trial court declared: "[Morlan] has admitted, or they have been deemed admitted by [Morlan's] failure to comply with Missouri Rule of Civil Procedure 74.04(c)(2), each and every one of the uncontroverted material facts in [Bancorp] and [Reahr's] Statement of Uncontroverted Material Facts. There is no genuine issue of material fact." The trial court ruled Bancorp and Reahr were entitled to summary judgment on the negligence claim in count I "because [Morlan's] negligence claim is barred by the economic loss doctrine." The trial court found RJF

---

3. By way of example, Bancorp and Reahr's fact number 18, and Morlan's "denial," read as follows:

18. On February 17, 2006, RJF notified Plaintiff of [Bancorp's] decision to non-renew the weather aggregate. *See* Exhibit H, Facsimile from Deb Aichele to Brenda Wells.

**Plaintiff denies this statement. Plaintiff does not feel that it was notified, and that any notification should have come before the lapse in coverage. There is a genuine dispute as to these facts.**

4. All rule references are to Missouri Court Rules (2010), unless otherwise indicated.

was also entitled to summary judgment "because [Morlan] cannot establish a negligence claim against RJF as a matter of law for the reason that RJF owed no duty to [Morlan]; for the reason that [Morlan's] negligence claim is barred by the economic loss doctrine; and for the reason that [Morlan] cannot establish damages." The trial court's judgment, also entered October 23, 2009, ordered that: "Judgment is entered in favor of [Respondents] [Bancorp], [Reahr] and [RJF]."

In its sole point relied on, Morlan contends the trial court erred in sustaining the motions for summary judgment because Respondents are not entitled to judgment as a matter of law in that the economic loss doctrine does not bar Morlan's claim. Respondents contend Morlan's point does not preserve any issue for appellate review, there is no genuine issue of material fact, and the economic loss doctrine bars Morlan's claims.[5] RJF also contends it was entitled to summary judgment because Morlan cannot establish that RJF owed a duty to Morlan or the amount of damages resulting from RJF's alleged negligence.

The issues for our determination are:

1. Did Morlan properly demonstrate any genuine issue of material fact?

2. Are Respondents RJF, Bancorp, and Reahr entitled to summary judgment as a matter of law because the economic loss doctrine bars Morlan's negligence claim?

3. Is RJF entitled to summary judgment because RJF showed facts negating it owed a duty to Morlan or

that Morlan could not establish damages?

## Standard of Review

We review a grant of summary judgment on a *de novo* basis. *Rice v. Shelter Mutual Ins. Co.*, 301 S.W.3d 43, 46 (Mo. banc 2009) (citing *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The record is reviewed in the light most favorable to the party against whom judgment was entered and that party is accorded the benefit of all reasonable inferences from the record. *ITT Commercial Fin.*, 854 S.W.2d at 376. "The key to summary judgment is the undisputed right to judgment as a matter of law, not simply the absence of a fact question." *Zerebco v. Lolli Bros. Livestock Market*, 918 S.W.2d 931, 934 (Mo.App. W.D.1996) (citing *ITT Commercial Fin.*, 854 S.W.2d at 380.)) Summary judgment is an extreme and drastic remedy and we exercise great caution in affirming it because the procedure cuts off the opposing party's day in court. *ITT Commercial Fin.*, 854 S.W.2d at 377.

## Analysis

### *No Genuine Issues of Material Fact Exist as to the Facts Recited in the Motions*

■ First, we determine whether Morlan properly demonstrated any genuine issue of material fact. Rule 74.04(c)(2) requires a party responding to a motion for summary judgment to serve a response admitting or denying each of the movant's factual statements. The rule provides:

---

**5.** Respondents have also urged this Court not to address Morlan's point for the reason it fails to comply with Missouri Court Rule 84.04 with respect to the point relied on, as well as the argument portion of the brief. Because our review is *de novo*, we elect not to

do so. Morlan's point and argument are not strong examples of compliance with Rule 84.04; however, we are able to sufficiently discern Morlan's allegations of error without impeding judicial review.

A denial may not rest upon the mere allegations or denials of the party's pleading. Rather, the response shall support each denial with specific references to the discovery, exhibits, or affidavits that demonstrate specific facts showing that there is a genuine issue for trial.

Attached to the response shall be a copy of all discovery, exhibits or affidavits on which the response relies.

A response that does not comply with this Rule 74.04(c)(2) with respect to any numbered paragraph in movant's statement is an admission of the truth of that numbered paragraph.

Here, Morlan's response referred to portions of the petition and denied the statement of facts as set forth by Respondents; the responses were denials without any specific reference to discovery, exhibits, or affidavits to demonstrate specific facts showing there is a genuine issue for trial. The trial court was correct to conclude that on these responses "each and every one of the uncontroverted material facts" as recited in the motions is admitted. Thus, Morlan's responses to the motions for summary judgment did not properly demonstrate any genuine issue as to material facts recited in the motions for summary judgment. However, that does not lead to a conclusion that there is no issue as to *all* facts alleged in the pleadings, or that summary judgment must automatically result for Respondents.

### Respondents Are Not Entitled to Judgment as a Matter of Law

■ Despite these factual responses, it is still entirely appropriate to respond to a motion for summary judgment by demonstrating the motion does not establish a right to summary judgment as a matter of law. *Midwest Crane and Rigging, Inc. v.*

*Custom Relocation's Inc.*, 250 S.W.3d 757, 761 (Mo.App. W.D.2008). Rule 74.04(c)(6) describes the trial court's role after responses, replies and sur-replies have been filed: "If the motion, the response, the reply and the sur-reply show that there is no genuine issue as to *any* material fact and that *the moving party is entitled to judgment as a matter of law,* the court shall enter summary judgment forthwith." (Emphasis added.)

However, the non-moving party's failure to respond properly to the motion for summary judgment does not mean that summary judgment should be automatically granted in favor of the moving party. Even if the facts as alleged by the moving party are not in dispute, those facts still must establish that he is entitled to judgment as a matter of law. *Parish v. Novus Equities, Co.,* 231 S.W.3d 236, 245 (Mo.App. E.D.2007) (citing *Ming v. Norfolk & W. Ry. Co.,* 947 S.W.2d 480, 482 (Mo.App. E.D.1997)); *Cashon v. Allstate Ins. Co.,* 190 S.W.3d 573, 579 n. 1 (Mo.App. E.D.2006).

■ If a movant for summary judgment is a defending party, as in the present case, a *prima facie* case for summary judgment may be established by showing: (1) facts that negate any one of the claimant's required proof elements; (2) that the claimant, after an adequate period of discovery, has not produced and would not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's required proof elements; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support an affirmative defense properly pleaded by the movant. *ITT Commercial Fin. Corp.,* 854 S.W.2d at 381. "When, and only when, the movant has made the [*prima facie*] showing required by Rule 74.04(c), Rule 74.04(e) places burdens on the non-movant." *Id.*

Even though the statements of uncontroverted material facts are "admitted for the purposes of analyzing a summary judgment motion," the record presented to us does not mandate a right to summary judgment for Respondents. *Id.* at 382. Our analysis turns to whether the motions established Respondents were entitled to judgment as a matter of law with respect to the economic loss doctrine and whether RJF is entitled to summary judgment because RJF owed no duty to Morlan or Morlan cannot establish damages.

### *Economic Loss Doctrine*

■ Appellant contends the uncontroverted facts, exhibits, affidavits and discovery provided to the trial court did not support a finding that RJF, Bancorp, and Reahr were entitled to summary judgment as their claim to summary judgment depends upon the absence of a special relationship between the parties and their statement of uncontroverted facts did not mention this relationship. RJF, Bancorp, and Reahr argue Morlan seeks only economic damages and the economic loss doctrine, which prohibits recovery in tort for purely economic losses that are contractual in nature, barred Morlan's negligence claim since there was no special relationship with Morlan that would bring the case within an exception to the economic loss doctrine. We find the economic loss doctrine inapplicable to Morlan's claim based on RJF, Bancorp, and Reahr's motions for summary judgment.

In Missouri, the economic loss doctrine has been observed to prohibit a plaintiff from seeking to recover in tort for economic losses that are contractual in nature. A number of Missouri decisions have held that recovery in tort for pure economic damages are only limited to cases where there is personal injury, damage to property other than that sold, or destruction of the property sold due to some violent occurrence. *See Wilbur Waggoner Equipment and Excavating Company v. Clark Equipment Co.,* 668 S.W.2d 601, 603 (Mo. App. E.D.1984); *Crowder v. Vandendeale,* 564 S.W.2d 879, 881 (Mo. banc 1978); *Forrest v. Chrysler Corp.,* 632 S.W.2d 29 (Mo. App. E.D.1982); *Clevenger & Wright Co. v. A.O. Smith Harvestore Products, Inc.,* 625 S.W.2d 906 (Mo.App. W.D.1981); *Gibson v. Reliable Chevrolet, Inc.,* 608 S.W.2d 471 (Mo.App. S.D.1980).

The roots of the economic loss doctrine were first discussed in *Crowder.*[6] In *Crowder,* the plaintiff had purchased a home from the original purchasers and brought an action against the contractor who had built the house to recover damages for the contractor's alleged failure to construct the house in a good workmanlike manner. In *Crowder,* our supreme court discussed the doctrine of implied warranty recognized in *Smith v. Old Warson Development Co.,* 479 S.W.2d 795 (Mo. banc 1972), and whether builders have a duty, enforceable by an action in tort, to protect prospective purchasers from damage consisting of deterioration or loss of bargain. The court noted that the doctrine of implied warranty, recognized in the *Old Warson* decision, "was predicated on the transaction of purchase rather than the conduct of the builder. This is not true of negligence, which is inherently tied to the conduct of the builder." *Crowder,* 564 S.W.2d at 881 (footnote omitted). The supreme court ultimately held that the plaintiff could not recover damages from the contractor in *Crowder* because implied warranty recovery provides an adequate and appropriate remedy and a second theory of recovery based on failure to use

6. However, the term "economic loss doctrine" was not used in the *Crowder* opinion.

ordinary care should not be authorized. *Id.* at 884.

In Missouri, "economic loss" in this context was first defined in *Groppel Company, Inc. v. U.S. Gypsum Co.,* 616 S.W.2d 49 (Mo.App. E.D.1981). " 'Economic loss includes cost of repair and replacement of defective property which is the subject of the transaction, as well as commercial loss for inadequate value and consequent loss of profits or use.' " *Id.* at 55 n. 5 (quoting *Salmon Rivers Sportsman Camps, Inc. v. Cessna Aircraft Co.,* 97 Idaho 348, 544 P.2d 306, 309–10 (1975)).

In *Clevenger,* our Western District discussed *Crowder* and noted:

> Important, however, was the court's general language limiting recovery in tort for pure economic damages to cases where there has been 'personal injury, or property damage either to property other than the property sold, or to the property sold when it was rendered useless by some violent occurrence.' This language is equally applicable to the case at bar and serves to bar any recovery based on tort in this case.

*Clevenger,* 625 S.W.2d at 909 (quoting *Crowder,* 564 S.W.2d at 881).

Our supreme court specifically discussed the economic loss doctrine in *Sharp v. American Hoist,* 703 S.W.2d 901, 903 (Mo. banc 1986), when it held that a plaintiff cannot recover on a strict-liability-in-tort theory where the only damage is to the product sold and there is no personal damage.

Significantly, the common thread running through these cases is the effort to impose tort liability on the builder of a home, or to recover in tort for the failure of a product which is alleged to be defective. The economic loss doctrine, however, has been held not to bar an action in tort if the contract recognizes a special relationship. Our Western District noted:

> The courts of our state have never recognized the mere breach of a contract as providing a basis for tort liability. In contract, however, the complained of act or omission which breaches a contract may also be a negligent act which would give rise to a liability in tort. In this latter instance, it is the act and not the breach of the contract which serves as the basis for the tort claim. Where the parties have entered into a contract, our common law has imposed the duty to perform with skill, care, and reasonable expedience and faithfulness in regard to the thing to be done or accomplished within the contract. The negligent failure to observe and perform any portion of that duty gives rise to an action in tort as well as an action for breach of contract.

*American Mortgage Investment Company v. Hardin–Stockton Corp.,* 671 S.W.2d 283, 293 (Mo.App. W.D.1984) (internal citation omitted).

In *American Mortgage,* the Western District recognized that the relationship of the parties—principal and broker as agent—may require the exercise of reasonable skill, diligence, and care in the handling of business given over or entrusted to the broker and that a fiduciary duty may arise by the nature of the contract itself. *Id.* at 293. "The action may be in tort … if the party sues for breach of a duty recognized by the law as arising from the relationship or status the parties have created by their agreement." *Business Men's Assurance Company of America v. Graham,* 891 S.W.2d 438, 453 (Mo.App. W.D.1994).

In this case, the trial court specifically found Morlan's claim was barred by the economic loss doctrine. However, as the

cases cited above note, the economic loss doctrine grew out of claims of tort which were alleged against builders of homes, or instances where a plaintiff sought to hold a manufacturer or distributor of a product liable in tort, as opposed to a contract action from which a fiduciary duty arose. The allegations of the petition make it clear that the nature of the tort action asserted by Morlan arises from the rendering of services to be provided by a contract and that the conduct of Respondents is the basis of the allegations and not the state of a home or product. Morlan's pleadings cite a special relationship among the parties to locate, acquire, and maintain the proper type and amount of insurance as requested by Morlan. Morlan alleges a duty arose from Respondents' relationship with Morlan or the status the parties created by agreement. If proven, Morlan's claim against Respondents would not be barred by the economic loss doctrine and Respondents would not be entitled to summary judgment as a matter of law.[7]

■ We acknowledge that "the existence of a business relationship does not give rise to a fiduciary relationship, nor a presumption of such a relationship." *Chmieleski v. City Products Corp.*, 660 S.W.2d 275, 294 (Mo.App. W.D.1983). However, the facts regarding the relationship between Morlan and Reahr and Bancorp, indicate a special relationship giving rise to a legally recognizable duty. Morlan's allegations, coupled with Respondents' exhibits, are evidence of such a relationship. This evidence includes: (1) Bancorp's Financial Services Proposal proposing a "financial partnership," explaining the relationship manager's role, and specifically recognizing Morlan's need for insurance with deductible exposure limits

in the event of catastrophic weather conditions; (2) the Dealer Loan Agreement by which Bancorp is designated as Morlan's attorney-in-fact effective in the event of Morlan's default on payment; and (3) Morlan's deposition where he explained the vice president of Bancorp told him he would have an aggregate weather deductible, they would take care of it, and he should not worry. The record also supports Morlan's allegation that Bancorp was entrusted with care for Morlan's policy coverage as it was Bancorp, not Morlan, who notified RJF on January 27, 2006, that it would not renew the aggregate weather deductible. Therefore, from the record before us, Bancorp and Reahr have not established as a matter of law that the economic loss doctrine barred Morlan's claim.

Similarly, RJF, an insurance broker, did not establish its right to summary judgment based on the economic loss doctrine. In RJF's Proposal to Morlan, RJF highlights its "skills and specialties" and the advantages of its strategically designed service team. Although these facts do not conclusively establish a special relationship between Morlan and RJF, the undisputed facts also do not establish as a matter of the law that the economic loss doctrine bars the claim.

Therefore, we find the Respondents were not entitled to summary judgment as a matter of law based on the proposition the economic loss doctrine bars Morlan's negligence claim.

### RJF's Duty to Morlan and Proof of Damages

■ To establish a viable case to recover for negligence, one must prove the

---

7. We express no opinion as to Morlan's ability to prove the facts as alleged or if the proof recited thus far is sufficient to submit the case to a jury. We only address here the economic loss doctrine as a bar to Morlan's current claims.

defendant had a duty, breached that duty, that the breach was a proximate cause of the plaintiff's damages, and that the plaintiff actually incurred damages as a result. *Bray v. Brooks*, 41 S.W.3d 7, 15 (Mo.App. W.D.2001). At issue here is whether RJF made a *prima facie* case for summary judgment by showing facts that negate: (1) a duty to Morlan; or (2) that Morlan incurred actual damages.

 We find the trial court erred in finding RJF owed no duty to Morlan because RJF did not show facts that negate the allegation that RJF owed Morlan a duty.[8] The pleadings allege a special relationship between RJF and Morlan and that RJF was an insurance broker/agent.[9] Although we cannot conclude from the record before us that RJF owed Morlan a duty in regards to the aggregate weather insurance, RJF has failed to show facts that completely negate this essential element. In fact, the exhibits and undisputed facts, as noted previously, tend to indicate a duty existed.

Additionally, the trial court erred in concluding Morlan could not establish damages. Although Autry Morlan himself was unable to establish damages in his deposition, this does not foreclose the possibility that Morlan's damages can be established by other proof; i.e., testimony of an accountant, business records, or other sources of proof. The petition alleges that the damages would be the difference in the amount of the insurance settlement had the aggregate weather deductible been in

place and the amount of the insurance settlement that was offered. Thus, the facts alleged by RJF also do not conclusively negate this element of Morlan's negligence claim.

In conclusion, Morlan alleged the existence of a fiduciary duty arising out of this special relationship and, as such, although the facts recited in the motions for summary judgment are deemed true for the purposes of the motions, the second requirement in Rule 74.04 that the moving party be entitled to judgment as a matter of law is absent. The trial court misapplied the law with respect to the economic loss doctrine by concluding it barred Morlan from recovery under the facts as alleged. The trial court additionally erred in finding RJF was entitled to summary judgment because RJF owed no duty to Morlan and because Morlan cannot establish damages as RJF's motion for summary judgment did not negate Morlan's required proof elements. Because this application of the law was incorrect, we reverse and remand to the trial court for further proceedings.

The judgment of the trial court is reversed as to count I of Morlan's petition. This case is remanded for further proceedings not inconsistent with this opinion.

RAHMEYER, P.J., and BATES J., Concur.

---

8. RJF's motion for summary judgment states that RJF is entitled to summary judgment because "RJF owed no duty to [Morlan] to keep the aggregate weather deductible in effect, when the named insured, [Bancorp], requested that said coverage not be renewed."

9. "Missouri courts have long held that a broker or agent who undertakes to procure insurance for another for compensation owes a duty of reasonable skill, care, and diligence in obtaining the requested insurance." *Busey Truck Equip., Inc. v. Am. Family Mut. Ins. Co.*, 299 S.W.3d 735, 738 (Mo.App. E.D. 2009). Once an agency relationship is established, as Morlan has alleged, a fiduciary relationship arises as a matter of law. *A.G. Edwards & Sons, Inc. v. Drew*, 978 S.W.2d 386, 395 (Mo.App. E.D.1998).