Turner v. Haar.

----

## Turner v. Haar, *Appellant*

### Division One, February 27, 1893.

1. **Expert Testimony.** An expert is one who by practice or observation has become experienced in any science, art or trade.

114 335
62a 567

114 335
72a 579

114 335
141 681

114 335
145 546
78a 151

114 335
d161 488

114 335
168 6313

114 335
h169 7428

Turner v. Haar.

2. ———: ARCHITECTS AND BUILDERS. Architects and builders are well known as persons engaged as a business in planning, constructing, remodeling and adapting to particular uses buildings and other structures, and if their experience and observation are sufficient they may be regarded as specially skilled in such business and qualified *prima facie* to testify as experts.

3. ———: ———. Where such witnesses are shown to have been engaged in the business a number of years, they are presumed to have acquired special knowledge of it and are *prima facie* qualified to give their opinion on any question regarding the construction, strength and sufficiency of buildings which may be a proper subject for opinion evidence.

4. ———: ———. Where the condition of the walls and the sufficiency or insufficiency of the foundation of a building are facts susceptible of direct proof, expert opinions that the separation of the walls may have resulted from their defective construction or the giving away of the foundation are inadmissible to prove that the walls were defective or that the foundation had given away.

5. ———: PRACTICE. Before a witness will be allowed to give his opinion as an expert upon a state of facts, a knowledge of which he derives from other witnesses, he must be put in possession of all the facts as ascertained or supposed on the question about which the inquiry is made. An opinion given upon a partial statement of the facts would be of no value.

6. **Master and Servant:** DUTY OF MASTER TO PROVIDE SAFE PLACE FOR SERVANT TO WORK: PROVISION AGAINST STORMS. It is the duty of the master to provide his servant a safe place in which to work, but he is not required to provide against storms, extraordinary and unprecedented in their character in the locality in question, but only such as could reasonably have been anticipated.

7. ———: ———: ———: PRESUMPTION. The mere falling of a building from its own weight and inherent weakness or from the effect of ordinary storms raises a fair presumption of its insufficiency and unfitness for use. But, where plaintiff's evidence to prove the destruction of the building also discloses the fact that it was destroyed during the prevalence of an unprecedented storm of sufficient violence to tear away a span of a bridge across the river and demolish a number of other buildings in the locality, the destruction of the building in question must be primarily attributed to the storm rather than to defects in the building and the use of machinery in it. The *prima facie* case made by the falling of the house is in such case rebutted and the burden still left upon plaintiff to show the insufficiency and unfitness of the building for the uses to which it was applied.

8. **Practice in Supreme Court:** REMANDING CAUSE FOR NEW TRIAL. Where evidence offered by plaintiff is erroneously held by the trial court to make a *prima facie* case without requiring further proof, the supreme court will remand the cause for new trial, as the error was one at law as to what was necessary to be proved by plaintiff, and the evidence offered may not have shown the strength of her case.

*Appeal from Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

REVERSED AND REMANDED.

*Beebe & Watson* for appellants.

(1) To establish her case it was necessary for the plaintiff affirmatively to prove that the building was not "strong enough to withstand the ordinary storms common to the locality" and that defendants knew or by the exercise of ordinary care might have known this fact in time to have warned the plaintiff. There can be no doubt of this proposition of law, and the court in instruction numbered 3 for the defendant so declared. *Stoher v. Railroad*, 91 Mo. 509; *McPherson v. Railroad*, 97 Mo. 253; *Flori v. St. Louis*, 69 Mo. 341; *Railroad v. Reeves*, 10 Wall. 176. (2) The plaintiff adduced no testimony from which the jury could by any process of fair reasoning infer that the building was not strong enough to withstand ordinary storms common to the locality. Therefore the court should have given defendant's first instruction directing a verdict for defendant. (3) The court erred in admitting the testimony of Van Patten and Wolf as to the cause of the crack in the wall. *First.* It was not a matter calling for expert testimony. Rogers on Expert Testimony [2 Ed.] p. 22. *Second.* The questions were so framed as to permit the witnesses to draw their own inferences as to the nature, truth and weight of the testimony of plaintiff in reference to the crack; this was erroneous. Rogers on Expert Testimony [2 Ed.] p.

62; *State v. Bowman*, 78 N. C. 509.    (4) The court also erred in admitting the testimony of Van Patten, Wolf and Cross as to the nature and effect of vibratory motion. *First.* It was not a subject calling for expert testimony.    *Second.* If it was a proper subject for expert testimony neither Van Patten nor Wolf were shown to be competent to express an opinion. *Third.* The questions propounded to these witnesses did not furnish data sufficient for them to give an opinion relevant to the case. *Gutridge v. Railroad*, 94 Mo. 468; *Haggerty v. Railroad*, 61 N. Y. 624; *Davis v. State*, 35 Ind. 496; *People v. Millard*, 53 Mich. 63; *Hagadorm v. Ins. Co.*, 22 Hun 249; *Craig v. Railroad*, 98 Ind. 109; *McMechen v. Mechen*, 17 W. Va. 683; *Guiterman v. Steamship Co.*, 83 N. Y. 358; *Bevins v. Barnfield*, 84 Ind. 43.    (5) The first instruction given on behalf of plaintiff.was erroneous to the prejudice of the defendants in the following particulars:    *First.* There was no testimony justifying the submission of the case to the jury.    *Second.* It leaves out of consideration entirely the extraordinary storm (disclosed in plaintiff's own case) as a factor, for the consideration of the jury in arriving at a verdict. *Third.* It assumes there was evidence that the building fell, instead of being blown down, and was thus erroneous and misleading.    *Fourth.* It declares the mere falling or blowing down of the building *prima facie* evidence of the right of plaintiff to recover, shifting the burden of proof upon the defendants to show affirmatively that they were guilty of no want of ordinary care in selecting the building.    Wharton on Negligence [2 Ed.] sec. 128–129.    *Fifth.* It authorizes a recovery, notwithstanding the knowledge of plaintiff of the alleged defective condition of the building, and continuance of service after such knowledge. *Sixth.* It does not require the jury to find that the alleged defects in

the building caused the injury. (6) The second instruction is also erroneous in that: *First.* There was no evidence authorizing the court to submit the case to the jury. *Second.* It leaves out of consideration the prevalence of the extraordinary storm disclosed by plaintiff's own testimony. *Third.* It fails to submit the vital question of whether the alleged defects in the building or the manner of its use rendered it insufficient to withstand the force of ordinary storms. *Fourth.* But on the contrary assumes that there was evidence tending to show that the building fell instead of being blown down.

*Sherry & Hughes* for respondent.

(1) The theory upon which the case was presented and tried upon the part of the plaintiff was that the building was not of sufficient strength for the purpose for which it was used, and therefore it was not necessary as claimed by the appellant for the plaintiff to prove that the building was not "strong enough to withstand ordinary storms." If the building fell from some other cause than that alleged by the plaintiff, then, as we understand it, it devolved upon the defendant to prove that the building fell from some other cause than that alleged by the plaintiff. (2) If the evidence was conflicting as to what caused the building to fall, then it was a question of fact for the jury to determine. (3) It was competent to prove by experts, after calling their attention to all the facts and circumstances connected with the construction of the building and its use, to ask them what, in their opinion, caused it to fall. Rogers on Expert Testimony, p. 49; *Leopold v. Van Kirk*, 29 Wis. 548; *Andre v. Harden*, 32 Mich. 326; *Brown v. Chenoworth*, 51 Tex. 469; *Tullis v. Kidd*, 12 Ala. 648; *DePhul v. State*, 44 Ala. 39; *Brabe v.*

*Martin*, 3 La. 177. (4) The court did not err in admitting the testimony of experts as to what effect the vibratory motion would have upon a building, as it is clearly a proper subject calling for expert testimony. *First*. The subject-matter was within range of the peculiar skill of the witnesses, and, *second*, the inquiry was directed to a matter of which the ordinary knowledge and experience does not enable to see what inferences should be drawn from the facts. Rogers on Expert Testimony, p. 18, and cases cited. (5) The question as to whether the witnesses possessed the necessary qualifications to enable them to testify as experts was a question for the trial court, and was within its discretion. Rogers on Expert Testimony, 25–26; *Jones v. Tucker*, 41 N. H. 547; *Dale v. Johnson*, 50 N. H. 452; *Boardman v. Woodman*, 47 N. H. 120. (6) The first instruction given on the part of the plaintiff was not erroneous; it does not leave out of consideration the fact of a storm; it does not assume that the building fell instead of being blown down; it does not declare that the falling or blowing down of the building was *prima facie* evidence of the right of plaintiff to recover, nor does it shift the burden of proof upon the defendants.

MACFARLANE, J.—The suit is to recover damages for personal injuries received by plaintiff, by reason of the fall of a building, in which she was employed by defendants to work; caused, as alleged, by its defective construction and improper use.

The petition charged that defendants were lessees and occupants of a four story brick building in Kansas City, in the second, third and fourth stories of which they were carrying on the business of manufacturers of overalls and pants; that on the eleventh of May, 1886, plaintiff was, and for a long time prior thereto

had been, with others, employed by defendants in the third story of said building in making these articles. "That the several floors of said building were insufficiently sustained and constructed; that the said building and the various parts thereof were weak, insecure, and insufficient for the business then and there carried on therein by defendants, or to sustain said building; that the joists supporting the floors of the third and fourth stories of said building were weakened and rendered more insecure, unsafe and unfit for use and occupation by defendants, as aforesaid, by placing on the fourth floor of said building a steam-engine of the weight of three tons, and by operating the same in the manufacture of overalls and pants; all of which matters and things, on the day and year last aforesaid, were, and for a long time prior thereto had been, known to defendants and unknown to plaintiff. That on said day, while engaged in her work in the third story of said building, and being ignorant of any danger, the whole of said building, together with the machinery therein, fell, by which plaintiff was injured," etc.

It appears from the evidence that defendants were lessees of the building, which was made of brick with a stone foundation, and was four stories high. They moved into the building in September, 1885. The boiler and engine were removed from the fourth story of the former place of business and put in the third story of this building about March, 1886. The engine was used to run twenty to twenty-five sewing machines. During the prevalence of a storm, on the eleventh of May, the roof was blown from the building, the walls and floors fell and plaintiff was carried down with the building by which she was injured.

The evidence of plaintiff tended to prove that the building was twenty-five feet wide and one hundred and six feet long, from north to south, and fronted

south. Another brick building composed the east wall, to which this one was bound by strap-iron anchors every ten or sixteen joists on each floor. On the third floor at the north end there was a crack or opening between the walls of the two buildings large enough for plaintiff to see through, and into which she could put her hand. This opening extended from the bottom to top of building. There was an elevator way cut up through the joists from the bottom to the top. A stairway was built inside the building on the west side to the third story and on the east side from the third to the fourth story. In the third floor was placed a steam boiler and engine and eighty feet of line shafting along the west side of the building and attached to the floor by means of iron brackets for the purpose of running the sewing machines; the whole machinery weighing about twelve hundred pounds. The evidence of plaintiff also tended to prove that the running of the engine imparted to the building a vibratory motion and caused it to tremble.

The defense was a denial of negligence, and that the building was destroyed by a violent and unprecedented storm. A. B. Cross, a witness for plaintiff, who had lived in Kansas City for thirty years, testified that he never remembered seeing a worse storm. It came from the northwest, "blew down some of the strong buildings here in town and blew a span out of the river bridge." Indeed the evidence leaves no doubt of the extraordinary and unprecedented character of the storm. Defendant's evidence tended to prove that the building was well constructed with good material, was well secured to the adjoining building, and that the machinery did no injury to it.

The court gave the jury the following instruction at the request of plaintiff:

"The jury are instructed that if the evidence shows that plaintiff was employed by defendant to work in their overalls factory, then it became the duty of the defendants to furnish plaintiff a reasonably safe place to work for the purpose for which it was being used; and if you believe from the evidence that defendants at the time alleged in the petition were operating a factory for the manufacturing of overalls in a four-story brick building on Third street, in Kansas City, Missouri, and that plaintiff was employed by defendant as one of the operators to work in said factory, and further believe from the evidence that on or about the eleventh day of May, 1886, while the plaintiff was engaged in the service of the defendants, the building in which plaintiff was at work fell or was blown down, and that plaintiff was injured, then you will find for plaintiff, unless you shall further find from the evidence that defendants were guilty of no want of ordinary care in selecting the said building for the purpose for which it was used, or by the use of ordinary care and diligence were unable to discover its unfitness for the purpose for which it was being used, provided you further find from the evidence that the building was unsafe and insecure for the purpose for which it was being used by defendants."

The verdict and judgment was for plaintiff and defendants appealed.

I. On the trial plaintiff offered and the court admitted over defendant's objection the testimony of three witnesses who gave their opinion as experts. Van Patten, one of the witnesses, testified that he was a contractor and builder, had been engaged in that business eight years and had built brick houses. Wolf, another witness, testified that he was a builder and had been for nine years, had worked in buildings where machinery was in use and where they were putting it

up. Cross, the third witness, had been an architect for thirty years. Being thus qualified they were permitted to give the jury their opinion that the settling of the foundation or defective construction of the walls was what caused the crack between the walls of the two buildings; that the effect of running machinery used to run shafting connected with a lot of sewing machines in the third story would be to cause vibration; that vibrations "would shake and weaken the walls, loosen the floor joists and everything that would have a tendency to strengthen the building;" and if the vibrations were strong enough they would shake the building down. The testimony of each was objected to on three grounds: "*First*, because the witness was not shown to be an expert; *second*, because no foundation had been laid for expert testimony, and *third*, because it was not a proper case for expert testimony."

An expert is defined to be "one who is skilled in any particular art, trade or profession, being possessed of peculiar knowledge concerning the same. Strictly speaking an 'expert' in any science, art or trade is one who by practice or observation has become experienced therein." Rogers on Expert Testimony, p. 2.

Architects and builders are well known as persons engaged as a business in planning, constructing, remodeling and adapting to particular uses buildings and other structures, and, if their experience and observation are sufficient, they may be regarded as being especially skilled in that business and qualified *prima face* to testify as experts. These witnesses were shown to have been engaged in the business a number of years and are presumed to have acquired special knowledge of the business. Their knowedge, skill and experience were not tested further by cross-examination, and we think they were *prima facie* qualified to give their opinion on any question in respect to the construc-

tion, strength and sufficiency of the building which may have been a proper subject for opinion evidence.

II. The opinion asked of these expert witnesses as to what produced the crack between the walls would have been proper enough in an issue involving the effect upon the wall a sinking of the foundation would have produced, but in the issue here the condition of the walls and the sufficiency or insufficiency of the foundation were facts susceptible of direct proof, and it was improper to get before the jury as proof that the wall was defective or the foundation had given way, an opinion that the separation of the walls may have resulted from these facts and conditions.

III. It is a well settled principle of law that, before a witness will be allowed to give his opinion as an expert upon a state of facts, a knowledge of which he derives from other witnesses, he must be put in possession of all the facts as ascertained or supposed on the question about which the inquiry is made. An opinion given upon a partial statement of the facts would be of no value. Rogers on Expert Testimony, p. 70; *Senn v. Railroad* 108 Mo. 142.

What effect the vibrations caused by running the machinery on the third floor may have had in weakening the building and rendering it insecure and dangerous was certainly a subject beyond the general knowledge of mankind and a proper one for opinion evidence. In this case, however, the evidence was worthless and improperly admitted, for the reason that the witnesses were not put in possession of all the facts necessary to enable them to form an intelligent opinion. The answer of one of the witnessess, "if the vibration was great enough it would throw the building down," forcibly illustrates the importance of the rule that requires an opinion of a witness to be predicated upon all the facts which may influence it. The question here

was whether this building was reasonably safe under ordinary circumstances and conditions for the uses to which it was applied. Vibrations, such as the evidence tended to prove to have resulted from running this machinery, may, and doubtless would have been more or less injurious to the most substantial building without causing the least insecurity; while if the vibration "had been great enough it would have thrown the building down" however securely constructed. This evidence instead of enlightening, was calculated to confuse and mislead the jury. The effort seems to have been to supply a proof of facts by use of opinion evidence, instead of proving the facts and giving the jury the benefit of the opinion of witnesses on the facts as proved.

IV. We also think from the instructions given that the case was tried upon an erroneous theory. This error arises from the evident opinion of the court, that, when the demolition of the building was shown, the burden of proof was shifted to defendants to show that the building was of sufficient strength to have withstood all storms that could reasonably have been anticipated in that locality. While there is no doubt that defendants owed to plaintiff, as one of their employes, the duty of care in supplying her a safe place in which to work, it is equally well settled that a master is not required to provide against storms, extraordinary and unprecedented in their character, in that locality; but only for such as could reasonably have been anticipated. *McPherson v. Railroad*, 97 Mo. 253; *Stoher v. Railroad,* 105 Mo. 195; *Flori v. St. Louis*, 69 Mo. 341.

It is also unquestioned law that the mere falling of a building from its own weight and inherent weakness, or from the action of ordinary storms, would raise a fair presumption of its insufficiency and unfitness for use. When, however, the evidence offered by plaintiff

to prove the destruction of the building also discloses. the fact that the building was destroyed during the prevalence of an unprecedented storm, one of sufficient violence to tear away one span of the bridge over the river and to demolish a number of other buildings in the city, we must attribute the destruction of this building, primarily, to the storm rather than to defects in the building or to improper use of machinery therein. The *prima facie* case made by the falling of the house is thus rebutted by the evidence proving it, and the burden still rested upon plaintiff to show the insufficiency and unfitness of the building for the uses to which defendants applied it.

The rule is stated by Wharton in his work on Negligence as follows: "The *onus* of establishing *casus* or *vis major* is on the defendant, when he seeks to avoid a *prima facie* liability by setting up such defense." "If the injury is shown to have resulted from a condition which is extraordinary and not to be expected, it is not enough simply to prove an injury to the plaintiff. Something that the defendants did, or that they omitted to do, must be proved to have been the cause of the injury." Wharton on Negligence, secs. 128 and 129. *Davis v. Railroad*, 89 Mo. 346; *Railroad v. Reeves*, 10 Wall. 190; *Nichols v. Winfrey*, 79 Mo. 545.

The instructions, number 1 being an example, when tested by these principles, were clearly erroneous and show that the case was tried and the judgment was rendered upon a misconstruction of the law.

V. We are asked to reverse the judgment without remanding the cause for the reason, as contended by defendants, that there was a total failure of proof that the building was insecure or dangerous. We are not willing to adopt, in this case, the rule commonly applied where plaintiff fails to make out his cause by the evidence. The court held that she made a *prima*

*facie* case of unfitness when she proved the falling of the building, and she was not required to go further. What proof she could have made does not appear. The error was one of law, as to what was necessary to be proved by plaintiff, and the evidence offered may not have shown the strength of her case. We think plaintiff is entitled to a trial of her case under the law as herein declared. Judgment reversed and cause remanded. All concur. BARCLAY, J., concurs on the ground stated in the fourth paragraph of the opinion.