

# SUPREME COURT OF MISSOURI
## en banc

THOMAS E. THARP, *et al.*,　　　　　)
　　　　　　　　　　　　　　　　　)
　　　Appellants/Cross-Respondents,　)
　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　)　　No. SC96528
　　　　　　　　　　　　　　　　　)
ST. LUKE'S SURGICENTER-　　　　　)
LEE'S SUMMIT, LLC,　　　　　　　 )
　　　　　　　　　　　　　　　　　)
　　　Respondent/Cross-Appellant.　　)

<span style="color:red">*Opinion issued December 10, 2019*</span>

## APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY
### The Honorable Kenneth R. Garrett, III, Circuit Judge

St. Luke's Surgicenter-Lee's Summit LLC appeals the circuit court's judgment against St. Luke's, following a jury trial, on a negligent credentialing claim brought by Thomas E. Tharp and Paula M. Tharp. The jury found in favor of the Tharps and awarded damages. On appeal, St. Luke's argues the Tharps failed to make a submissible case of negligent credentialing. This Court agrees. The circuit court's judgment is reversed, and the case is remanded for a new trial.[1]

---

[1] This Court's previous opinion in this matter, issued February 26, 2019, is hereby set aside.

**Factual and Procedural History**

This case arises from a medical malpractice action against a surgeon operating out of St. Luke's Surgicenter in Lee's Summit. In December 2011, Thomas Tharp underwent a laparoscopic cholecystectomy – a surgical procedure to remove his gallbladder. The Tharps allege the surgeon damaged Mr. Tharp's hepatic duct and common bile duct during the procedure, causing bile leakage, inflammation, and liver damage. The Tharps settled with the surgeon but proceeded to trial against St. Luke's, alleging St. Luke's negligently granted the surgeon staff privileges at its hospital.

Mr. Tharp's surgeon applied for staff privileges at St. Luke's in 2005 and renewed his privileges several times thereafter. Staff privileges allow physicians to utilize a healthcare facility to admit and treat patients as independent care providers rather than as employees of the facility. Among other requirements, St. Luke's requires physicians applying for staff privileges to disclose whether they have ever been sued for professional malpractice and, if so, the number of lawsuits they have defended. Under St. Luke's bylaws, failing to provide complete information in the application for staff privileges is grounds to automatically remove a physician from consideration. Evidence presented at trial established Mr. Tharp's surgeon had defended more lawsuits at the time he operated on Mr. Tharp than he had reported to St. Luke's on his application.

St. Luke's filed a motion for directed verdict at the close of all evidence, arguing there was insufficient evidence to establish St. Luke's breached any duty owed to Mr. Tharp. St. Luke's also argued its act of granting the surgeon staff privileges was not a proximate cause of Mr. Tharp's injuries. The circuit court overruled the motion for

2

directed verdict. The jury returned a verdict in favor of the Tharps. St. Luke's then filed a post-trial motion for judgment notwithstanding the verdict (JNOV), again arguing the Tharps introduced insufficient evidence to support their claim of negligent credentialing. Again, St. Luke's argued there was insufficient evidence to establish St. Luke's breached any duty owed to Mr. Tharp or St. Luke's actions were the proximate cause of Mr. Tharp's injuries. The circuit court also overruled this motion.

After the verdict, the circuit court entered judgment in favor of the Tharps. St. Luke's filed a motion to modify the judgment, asking the circuit court to order damages awarded by the jury based on future medical expenses to be paid in periodic installment payments instead of a lump sum pursuant to § 538.220.[2] The circuit court sustained St. Luke's motion and amended its judgment accordingly. The Tharps appeal the circuit court's application of § 538.220.2, challenging the constitutional validity of this section, and St. Luke's cross-appeals the circuit court's overruling of its motions for directed verdict and JNOV.

## Jurisdiction

The Tharps challenge the constitutional validity of § 538.220.2 as applied by the circuit court. This Court has exclusive appellate jurisdiction over cases challenging the constitutional validity of a statute. MO. CONST. art. V, § 3. This Court adheres to the "important principle of not reaching constitutional issues unless necessarily required."

---

[2] All statutory references are to RSMo 2000, as amended.

3

*Hink v. Helfrich*, 545 S.W.3d 335, 343 (Mo. banc 2018). This Court, therefore, declines to reach the Tharps' points because St. Luke's appeal is dispositive.

**Standard of Review**

"The standard for reviewing a denied motion for JNOV is essentially the same as for reviewing the denial of a motion for directed verdict." *Sanders v. Ahmed*, 364 S.W.3d 195, 208 (Mo. banc 2012). "A case may not be submitted unless legal and substantial evidence supports each fact essential to liability." *Id*. This Court views all evidence in the light most favorable to the jury's verdict and draws all reasonable inferences in the plaintiff's favor. *Id*. This Court must disregard all conflicting evidence and inferences. *Id*. "A court may reverse the jury's verdict for insufficient evidence only when there is a complete absence of probative fact to support the jury's conclusion." *Id*.

**Analysis**

Generally, modern hospitals staff their facilities with two classes of physicians: staff physicians who are hospital employees and independent physicians to whom the hospital grants staff privileges. Under this arrangement, physicians working under staff privileges are typically independent contractors, not hospital employees. Injured patients in the past, therefore, had difficulty recovering against a hospital for injuries caused by an independent physician because the doctrine of respondeat superior does not apply to independent contractors. *See Central Trust and Inv. Co. v. Signalpoint Asset Mgmt.*, 422 S.W.3d 312, 323 (Mo. banc 2014) ("An employer generally is not held vicariously liable … for the acts of its independent contractors, who are not considered employees for purposes of *respondeat superior*."). Beginning in the 1960s, however, courts began to realize hospitals

4

are businesses that hire, utilize, and benefit from independent contractors similarly to other types of businesses. *See,e.g., Darling v. Charleston Comm. Mem. Hosp.*, 211 N.E.2d 253, 257 (Ill. 1965), *cert. denied,* 383 U.S. 986 (1966). The trend toward allowing recovery against hospitals for injuries caused by independent physicians began to accelerate under the theory that "an employer is liable for an independent contractor's negligence when the employer fails to exercise reasonable care in hiring a **competent** contractor." *LeBlanc v. Research Belton Hosp.*, 278 S.W.3d 201, 206 (Mo. App. 2008) (internal quotations omitted) (emphasis added). Indeed, this Court, citing *Darling*, explained, "The fact the defendant doctors here were not employees of the defendant hospital does not necessarily mean the hospital cannot be held liable for adverse effects of treatment or surgery approved by the doctors." *Gridley v. Johnson*, 476 S.W.2d 475, 484 (Mo. 1972).

In *LeBlanc*, the court of appeals recognized "Missouri precedent does not bar a negligence claim against a hospital for injuries caused by independent doctors authorized to practice in that hospital." 278 S.W.3d at 206. This theory is called negligent credentialing. *See id.* at 204. The theory focuses on whether a hospital gathered "all the pertinent information to make a reasonable decision as to whether physicians should have access to hospital facilities." Steven R. Weeks, Comment, *Hospital Liability: The Emerging Trend of Corporate Negligence*, 28 IDAHO L. REV. 441, 454 (1992). Negligent credentialing "is merely the application of principles of common law negligence to hospitals in a manner that comports with the true scope of their operations." *LeBlanc*, 278 S.W.3d at 207 (internal quotations omitted). Accordingly, before a hospital can be held liable for an independent physician's negligence, the plaintiff must show "the hospital's

duty owed to the patient, the breach of the duty, and the resulting injury from the breach."

*LeBlanc*, 278 S.W.3d at 207; *see also Hoover's Dairy, Inc. v. Mid-Am. Dairymen, Inc.*, 700

S.W.2d 426, 431 (Mo. banc 1985) (holding the basic elements of a prima facie negligence

claim are duty, breach of that duty, causation, and damages).

*Issue preserved for appellate review*

In response to St. Luke's cross-appeal, the Tharps initially argue St. Luke's failed

to preserve its insufficient evidence claim. "To preserve a question of submissibility for

appellate review in a jury-tried case, a motion for directed verdict must be filed at the close

of all the evidence …." *Howard v. City of Kansas City*, 332 S.W.3d 772, 790 (Mo. banc

2011); *see also Sanders* 364 S.W.3d at 207 ("[I]f defendant chooses to put on evidence …

[a] motion for directed verdict at the close of all evidence becomes the meaningful motion

to preserve the issue…."). Further, "in the event of an adverse verdict, an after-trial motion

for a new trial or to set aside a verdict must assign as error the trial court's failure to have

directed such a verdict." *Howard*, 332 S.W.3d at 790 (internal quotations omitted).

Accordingly, to preserve a jury-tried issue for appellate review, a party must include the

issue in both a motion for directed verdict at the close of all evidence, if the defendant puts

on evidence, and in a motion for JNOV. *Id.*

The Tharps do not dispute St. Luke's made both a motion for directed verdict and a

motion for JNOV. Instead, the Tharps argue the motions were not sufficiently specific to

preserve St. Luke's insufficient evidence claim for appellate review. Rule 72.01(a) states

a motion for directed verdict "shall state the specific grounds therefor." The Rule 72.01(a)

standard, however, is not a demanding one. Indeed, this Court has held an oral motion for

6

directed verdict which stated, "We think plaintiff failed to make a submissible case on issues of negligent causation," sufficiently preserved the issue for appellate review. *Sanders*, 364 S.W.3d at 208. Here, St. Luke's motion for directed verdict asserted in pertinent part, "[T]he evidence fails to satisfy all of the necessary elements of … negligent credentialing …. [T]here is no evidence that would support the conclusion that there was any breach of duty on the part of defendant that constituted a proximate cause of the event complained of." St. Luke's motion for JNOV stated in pertinent part, "[P]laintiffs failed to present submissible evidence that [St. Luke's] breached any legally-recognizable negligence duty …. [P]laintiffs' evidence … fails to adequately demonstrate proximate cause." These specifically articulated grounds were sufficient to preserve St. Luke's insufficient evidence challenge for appellate review.

*Insufficient evidence to support a finding of negligent credentialing*

St. Luke's argues the circuit court erred in overruling its motion for JNOV because the Tharps failed to make a submissible case of negligent credentialing. Specifically, St. Luke's argues the evidence was insufficient to support a negligent credentialing claim because there was no evidence showing Mr. Tharp's surgeon was incompetent to conduct the procedure he performed and credentialing the surgeon was not the proximate cause of Mr. Tharp's injuries. "A court may reverse the jury's verdict for insufficient evidence only when there is a complete absence of probative fact to support the jury's conclusion." *Sanders*, 364 S.W.3d at 208.

7

*A. Duty*

St. Luke's must owe a duty to Mr. Tharp before it can be liable to him for negligence. *Hoover's Dairy,* 700 S.W.2d at 431; *see also LeBlanc*, 278 S.W.3d at 207. "Whether a duty exists is purely a question of law." *Lopez v. Three Rivers Elec. Coop.,Inc.*, 26 S.W.3d 151, 155 (Mo. banc 2000). In general, "a duty exists when a general type of event or harm is foreseeable." *Pierce v. Platte-Clay Elec. Co-op., Inc.*, 769 S.W.2d 769, 776 (Mo. banc 1989). The scope of a defendant's duty is a question of law for the court to resolve. *See Harris v. Niehaus*, 857 S.W.2d 222, 225 (Mo. banc 1993). This Court has never before considered the scope of the duty hospitals owe to their patients when deciding whether to grant staff privileges to a physician. The Restatement of Torts, however, is instructive:

> Section 411 of the Restatement of Torts reads in pertinent part:
>
> An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a **competent and careful** contractor:
>
> (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done.

RESTATEMENT (SECOND) OF TORTS § 411 (AM. LAW INST. 1965) (emphasis added). Comment a to Restatement § 411 explains the words "competent and careful" in this context mean a contractor who has the "knowledge, skill, experience, and available equipment which a reasonable man would realize that a contractor must have in order to do the work which he is employed to do without creating unreasonable risk of injury to others." *Id*. cmt. a. Applied in the context of credentialing physicians, a hospital,

8

therefore, must "ensure the competency of its medical staff and the quality of medical care provided through prudent selection, review and continuing evaluation of the physicians granted staff privileges." Barry R. Furrow, *Managed Care Organizations and Patient Injury: Rethinking Liability*, 31 GA. L. REV. 419, 457 (1997) (internal quotations omitted). Accordingly, St. Luke's owes a duty to its patients to credential only competent and careful physicians because it is foreseeable that incompetent or generally careless physicians could injure St. Luke's patients. *See Platte-Clay Elec. Co-op.,* 769 S.W.2d at 776; *see also Baker v. Scott Cty. Milling Co.*, 20 S.W.2d 494, 499 (Mo. 1929) ("concluding the duty rests on the employer to select a skilled and competent contractor"). Because Mr. Tharp was St. Luke's patient, St. Luke's owed him this duty.

*B. Breach*

St. Luke's must breach a duty owed to Mr. Tharp to be liable for negligence. A defendant breaches its duty when it "fail[s] to exercise reasonable care to perform [its] undertaking." *Hoover's Dairy*, 700 S.W.2d at 433; *see also Chavez v. Cedar Fair, LP*, 450 S.W.3d 291, 294 (Mo. banc 2014) ("The common law ordinary negligence rule requires a defendant to exercise the degree of care of a reasonable person of ordinary prudence under similar circumstances ...."). As noted above, a hospital's undertaking – its duty – is to credential competent and careful physicians. *See Baker,* 20 S.W.2d at 499; RESTATEMENT (SECOND) OF TORTS § 411. A hospital, therefore, fulfills its duty by using reasonable care to credential competent and careful physicians. *See Hoover's Dairy*, 700 S.W.2d at 433; *Chavez*, 450 S.W.3d at 294. Accordingly, St. Luke's did not breach its duty to the Tharps unless it failed to use reasonable care to determine whether Mr. Tharp's surgeon was

9

qualified and therefore should be granted staff privileges. *Hoover's Dairy*, 700 S.W.2d at 433; *see also Lee v. Pulitzer Pub. Co.*, 81 S.W.3d 625, 634 (Mo. App. 2002) ("In Missouri, an employer will be held liable for the negligent action of an independent contractor when the employer fails to **exercise reasonable care to hire a competent** contractor.") (emphasis added); *Sullivan v. St. Louis Station Assoc's*, 770 S.W.2d 352, 356 (Mo. App. 1989) (concluding employer must **exercise reasonable care in selecting "skilled and competent"** contractor) (emphasis added); RESTATEMENT (SECOND) OF TORTS § 411; *LeBlanc*, 278 S.W.3d at 206 ("concluding an employer is liable for an independent contractor's negligence when the employer fails to **exercise reasonable care in hiring a competent** contractor") (internal quotations omitted) (emphasis added).

The Tharps contend St. Luke's breached its duty by credentialing Mr. Tharps' surgeon because the surgeon did not list all the lawsuits he had defended over his career in his application for staff privileges as required by St. Luke's bylaws. The Tharps' evidence supporting their negligence theory focuses on St. Luke's failure to follow its bylaws, but their evidence fails to address the surgeon's qualifications. It is true, had St. Luke's followed its bylaws by rejecting the surgeon's application for failing to list his entire litigation history, Mr. Tharps' surgeon would not have received staff privileges at St. Luke's. However, St. Luke's failure to follow its bylaws, alone, is insufficient to show St. Luke's breached its duty to credential a competent and careful surgeon. Even though the surgeon did not list every lawsuit he had defended in his career, there was no evidence showing he was unqualified due to the number of lawsuits the surgeon had defended. In fact, the Tharps' own expert admitted there was "no magical number" of lawsuits that

10

denotes a surgeon is unqualified to practice medicine. Indeed, a physician's specialty can have a dramatic impact on how frequently the physician is sued over the course of his or her career. *See* Anupam B. Jena, et al., *Malpractice Risk According to Physician Specialty*, 356 NEW ENGLAND J. MED. 629, 632 (2011).[3] The Tharps presented evidence St. Luke's deviated from its bylaws, but there was no evidence showing St. Luke's credentialed an unqualified surgeon. The record is devoid of any evidence Mr. Tharp's surgeon lacked the knowledge, skill, and experience necessary to operate on patients like Mr. Tharp "without creating unreasonable risk of injury."[4] RESTATEMENT (SECOND) OF TORTS § 411. Without

---

[3] In a study of more than 40,000 physicians, totaling nearly a quarter-million – physician years of experience, the authors found, "[t]he proportion of physicians facing a [malpractice] claim each year ranged from 19.1 percent in neurosurgery, 18.9 percent in thoracic–cardiovascular surgery, and 15.3 percent in general surgery to 5.2 percent in family medicine, 3.1 percent in pediatrics, and 2.6 percent in psychiatry," thereby demonstrating the dramatic impact a physician's specialty has on his or her likelihood to encounter a malpractice claim. Jena¸ et al., *supra* at 629.

[4] The dissenting opinion claims the Tharps presented evidence of incompetence by way of their expert who testified about the surgeon's record of other surgeries, including one which a patient died. Although this is evidence the surgeon fell below the standard of care in the past, falling below the standard of care "is evidence of ordinary negligence, but not incompetency." *Tendai v. Mo. Bd. of Registration for Healing Arts*, 161 S.W.3d 358, 371 (Mo. banc 2005), overruled on other grounds by *Albanna v. State Bd. of Registration for Healing Arts*, 293 S.W.3d 423, 428 n.2 (Mo. banc 2009). "'Incompetency,' as this Court has said, is a state of being," which, to prove, requires more than evidence of prior negligent conduct. *Albanna*, 293 S.W.3d at 436. Even acts of repeated negligence do not support finding a surgeon is incompetent when there is no evidence that shows a surgeon generally lacks a professional ability. *Id.* at 435. Accordingly, to establish incompetence, there must instead be evidence of the surgeon's state of being, which shows the surgeon lacks the "knowledge, skill, experience, and available equipment which a reasonable man would realize that a contractor must have in order to do the work which he is employed to do without creating unreasonable risk of injury to others." RESTATEMENT (SECOND) OF TORTS § 411 cmt. a. Despite the dissenting opinion's claims, the Tharps' expert never testified the surgeon was incompetent or lacked the knowledge, skill, and experience necessary to operate on patients like Mr. Tharp without creating an unreasonable risk of injury.

evidence showing a reasonable investigation into the surgeon's background and qualifications would have revealed he was unqualified to perform laparoscopic cholecystectomies, there is no evidence St. Luke's breached its duty to the Tharps to credential competent and careful physicians.

*C. Causation*

Even if a plaintiff establishes a breach of duty, a successful negligence claim requires the plaintiff to also prove the breach caused the plaintiff damage. *Hoover's Dairy,* 700 S.W.2d at 431. To prevail on their negligence claim, therefore, the Tharps must present evidence that credentialing Mr. Tharp's surgeon caused Mr. Tharp's injuries.

In all negligence cases, Missouri courts require the plaintiff to prove the defendant's acts were both the actual and proximate cause of the plaintiff's damage. *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 862-63 (Mo. banc 1993). Actual cause means causation in fact. *Id.* at 861. The test for actual cause asks whether the plaintiff would have been injured but for some conduct on the defendant's behalf. *Id*. at 862. Proximate cause, also known as legal cause, means "the injury must be a reasonable and probable consequence of the act or omission of the defendant." *Id.* at 865. "Proximate cause inquires into the scope of foreseeable risk created by the defendant's act or omission." *Nail v. Husch Blackwell Sanders, LLP*, 436 S.W.3d 556, 563 (Mo. banc 2014). The proximate cause requirement ensures events that are "too far removed from the ultimate injury or

12

damage" do not provide a basis for liability even if they are causal in fact. *Callahan*, 863 S.W.2d at 865.[5]

Comment b to § 411 of the Restatement of Torts explains, "The employer of a negligently selected contractor is subject to liability … for physical harm caused by his failure to exercise reasonable care to select a competent and careful contractor, **but only for such physical harm as is so caused**" by the employer's failure to use reasonable care in selecting the contractor. RESTATEMENT (SECOND) OF TORTS § 411, cmt. b (emphasis added). Further, "if the incompetence of the contractor consists in his lack of skill and experience…the employer is subject to liability for any harm caused by the contractor's lack of skill [or] experience … **but not for any harm caused solely by the contractor's inattention or negligence**." *Id*. (emphasis added). The Restatement, therefore, does not allow recovery against a contractor's employer if the contractor simply causes harm of any type or in any manner. Rather, courts must ask "whether the precise manner of a particular injury was a natural and probable consequence of [the employer's] negligent act." *Lopez*, 26 S.W.3d at 156. Therefore, to prove causation under the negligent credentialing theory, a plaintiff must show: (1) but for the hospital's breach of its duty to credential a competent and careful physician, the plaintiff would not have been injured; and (2) the plaintiff's injuries were a natural and probable consequence of the breach of this duty. Otherwise, there is nothing to link a hospital's act of credentialing a physician to the patient's injuries.

---

[5] This Court, in *Callahan*, illustrated this concept by explaining, "[C]arried to the ridiculous, 'but for' the mother and father of the defendant conceiving the defendant and bringing him into this world, the accident would not have happened. Obviously, this is not a basis for holding the mother and father liable." 863 S.W.2d at 865.

13

When a physician injures a patient, he or she may be liable to the patient for negligence or other tort. The hospital, however, cannot be liable for the physician's negligence under a theory of negligent credentialing unless the patient's injuries were the result of the hospital's breach of a duty it owes to the patient. Because a hospital's duty to its patients is to credential competent and careful physicians, a hospital's act of credentialing a physician is not the proximate cause of a patient's injuries unless the injuries are a consequence of receiving treatment from an unqualified physician. If a surgeon injures a patient while operating, not because he or she lacks the general competence or care necessary to perform the procedure, but rather because the surgeon simply was negligent in that particular instance, the patient's injuries are not the natural and probable consequence of credentialing the surgeon. After all, even a supremely qualified, competent, and careful physician may nevertheless injure a patient through an isolated negligent act. *See Tendai v. Mo. State Bd. of Registration for Healing Arts*, 161 S.W.3d 358, 369 (Mo. banc 2005) (overruled on other grounds). In this circumstance, recovery against the physician may be appropriate because the physician is the one at fault, but recovery against the hospital is not appropriate because the hospital bears no fault if it credentialed a competent and generally careful physician. Accordingly, a plaintiff cannot establish the causation element of a negligent credentialing claim unless there is evidence showing the patient's injuries were the natural and probable consequence of the surgeon's general incompetence or carelessness.

Here, the Tharps' evidence supports a finding of actual cause because but for St. Luke's credentialing the surgeon in violation of its bylaws, Mr. Tharp's surgeon would

14

not have operated on him.  The evidence, however, does not support a finding of proximate cause because Mr. Tharp's injuries were not within "the scope of foreseeable risk" created by St. Luke's act of credentialing Mr. Tharp's surgeon.[6] *Nail*, 436 S.W.3d at 563.  The Tharps failed to offer any evidence showing Mr. Tharp's surgeon was unqualified to perform laparoscopic cholecystectomies and the surgeon's incompetency or general carelessness was the proximate cause of Mr. Tharp's injuries. Because there was no evidence showing Mr. Tharp's surgeon was unqualified in this manner and, therefore, likely to injure any patient, there was insufficient evidence to support a finding St. Luke's act of credentialing the surgeon caused Mr. Tharp's injuries.  Accordingly, there was insufficient evidence to support their negligent credentialing claim.[7]

---

[6]  Under St. Luke's bylaws, failing to provide complete information in the application for staff privileges is grounds to automatically remove a physician from consideration.  This requirement does not appear to be limited to information related to the physician's qualifications.  Thus, St. Luke's failure to follow this bylaw requirement may offend other purposes beyond ensuring the qualifications of the physicians it credentials.

[7] Although not raised in this appeal, the verdict director submitting the negligent credentialing claim was also deficient because it did not require the jury to find Mr. Tharp's surgeon to be unqualified. "[A] not-in-MAI jury instruction must follow substantive law by submitting the ultimate facts necessary to sustain a verdict." *Johnson v. Auto Handling Corp.*, 523 S.W.3d 452, 463 (Mo. banc 2017) (internal quotations omitted). Ultimate facts are facts the jury must find to return a verdict for the plaintiff. *See Lasky v. Union Elec. Co.*, 936 S.W.2d 797, 800 (Mo. banc 1997) ("The instruction must hypothesize the facts essential to the plaintiff's claim."). To hold a hospital liable for negligent credentialing, the ultimate facts a jury must find are: (1) the hospital credentialed an incompetent or generally careless physician; (2) the hospital was thereby negligent; and (3) as a direct result of such negligence, the plaintiff suffered damage. Litigants pursuing a negligent credentialing claim must not only present evidence of the physician's incompetence or carelessness, but must also include this finding in the verdict director.

15

*The case is remanded for a new trial*

Having found the Tharps failed to make a submissible case of negligent credentialing, the question remains whether to reverse the circuit court's judgment and enter judgment in favor of St. Luke's or to remand the case for a new trial.[8] Rule 84.14 governs the disposition of cases on appeal. The rule states, in pertinent part, "Unless justice otherwise requires, the court shall dispose finally of the case." Because the Court finds justice requires allowing the Tharps an opportunity to attempt to correct their lack of evidence to support their negligent credentialing claim, the case is remanded for a new trial.

Rule 84.14 directs the appellate courts of this state to finally dispose of all cases "[u]nless justice otherwise requires." In light of this directive, this Court has remanded cases for a new trial instead of reversing outright when justice requires the plaintiff to have a second opportunity to make a submissible case. *See, e.g., Dietz v. Humphreys*, 507 S.W.2d 389, 392 (Mo. 1974). Declining to remand a case for a new trial each time a plaintiff's verdict is reversed for insufficient evidence, however, does not necessarily result in injustice. If this were the rule, any time an appellate court found the plaintiff failed to make a submissible case, the plaintiff could simply try again, resulting in unending litigation. Rather, the plaintiff must prove that justice requires he or she receive a second chance to make a submissible case. Rule 84.14; *see also Warren v. Paragon Techs. Grp.,*

---

[8] This issue arose in the Tharps' motion for rehearing, filed pursuant to Rule 84.17(a)(1). The Court sustained the Tharps' motion, ordered briefing on the issue whether to remand the case for a new trial instead of entering judgment for St. Luke's pursuant to Rule 84.14, and set the case for limited rehearing on this issue.

16

*Inc.*, 950 S.W.2d 844, 846 (Mo. banc 1997); *Dietz*, 507 S.W.2d at 392; *Kaufman by Kaufman v. Nagel*, 807 S.W.2d 91, 95 (Mo. banc 1991). In other words, the plaintiff must demonstrate it would violate basic principles of fairness to reverse a judgment in his or her favor without remanding. Making this showing requires a plaintiff to satisfy a demanding two-part test. First, the plaintiff must actually possess sufficient evidence to make a submissible case upon retrial. *See Warren*, 950 S.W.2d at 846. Second, the plaintiff must convince the appellate court he or she was justified in failing to present the evidence during the trial. *See Dietz*, 507 S.W.2d at 392.

*A. The Tharps possess sufficient evidence to make a submissible case upon retrial*

The Tharps failed to make a submissible case of negligent credentialing because, by failing to present evidence that a reasonable investigation into the surgeon's background and qualifications would have revealed he was unqualified to perform laparoscopic cholecystectomies, the Tharps did not establish St. Luke's breached its duty to the Tharps to credential a competent and careful physician. Likewise, the Tharps failed to make a submissible case because they did not establish the surgeon was incompetent or generally careless and, therefore, failed to establish St. Luke's act of credentialing the surgeon was the proximate cause of Mr. Tharp's injuries. But in their motion for rehearing, the Tharps submit they possess additional evidence that, if presented upon retrial, would allow them to make a submissible case of negligent credentialing under the holding of this opinion. St. Luke's argues the Tharps' proffered evidence would not enable them to make a submissible case because the additional evidence is not sufficient to find the surgeon was incompetent or generally careless. But St. Luke's is incorrect.

17

To make a submissible case, the Tharps "must present substantial evidence of every fact necessary to establish the liability of defendant." *Hannah v. Mallinckrodt*, 633 S.W.2d 723, 724 (Mo. banc 1982). "The determination whether plaintiffs made their case requires the Court to view the evidence that bears upon the elements of [the cause of action] in the light most favorable to plaintiffs, and give them the benefit of all reasonable inferences to be drawn from the evidence." *Huttegger v. Davis*, 599 S.W.2d 506, 508 (Mo. banc 1980). "[L]iability cannot rest upon guesswork, conjecture or speculation beyond inferences reasonably to be drawn from the evidence." *Probst v. Seyer*, 353 S.W.2d 798, 802 (Mo. 1962).

The Tharps contend, upon retrial, they will introduce evidence of scores the surgeon received on several continuing medical education (CME) examinations. The Tharps submit the surgeon's low scores on several CME pre-tests "suggest his inability to retain essential knowledge" necessary to competently and carefully perform the type of surgery Mr. Tharp underwent. The Tharps also submit they will present more evidence about the surgeon's litigation history in an attempt to show he was sued more frequently as he aged as well as expert testimony as to the alleged significance of those statistics and the general effect of aging on surgical performance. While the probative value of any of the Tharps' proffered new evidence is for the jury to decide,[9] the Court finds the proffered additional evidence could support a finding that the surgeon was incompetent or generally careless.

---

[9] While relevant, the Court takes no position about the admissibility of the Tharps' proffered new evidence, as "[t]he admissibility of evidence lies within the sound discretion of the trial court" in light of the manner or circumstance in which it is offered. *Nelson v. Waxman*, 9 S.W.3d 601, 603 (Mo. banc 2000).

18

This additional evidence goes to the "fact[s] necessary to establish the liability of defendant" that the Tharps failed to establish. *Mallinckrodt*, 633 S.W.2d at 724. Accordingly, in light of the Tharps' proffered new evidence, this Court is persuaded they could make a submissible case of negligent credentialing upon retrial. *Warren*, 950 S.W.2d at 846.

B. *Justice requires remand because the Tharps were justified in failing to introduce their proffered new evidence during the first trial*

Although pointing to additional evidence that could be introduced upon retrial is necessary for this Court to order remand upon reversal of a plaintiff's verdict based on lack of evidence, it is insufficient by itself to justify remanding a case when the plaintiff failed to introduce evidence of each essential element of his or her cause of action. All plaintiffs are entitled to their day in court subject to all attendant rights and responsibilities. One of those responsibilities is the plaintiff's burden to prove he or she is entitled to the relief sought. Conversely, facilitating finality in litigation fosters a sense of confidence and integrity in the legal system. This is why justice typically would not require, and in fact would discourage, the plaintiff receiving a second bite at the apple. But under certain circumstances it would be manifestly unfair to deny a plaintiff the opportunity to attempt to correct the deficiency the Court found in his or her case.

The Tharps seek a second trial because they did not know what evidence this Court would require to make a submissible case of negligent credentialing. The Tharps admit they possessed additional evidence that this Court today holds was essential to their cause of action but declined to introduce at trial. They contend, however, they were justified in

19

failing to introduce such evidence. Whether a plaintiff was justified in failing to introduce certain evidence during trial is not conducive to a hard and fast rule, but past cases shed light on situations in which an appellate court should not fault a plaintiff for failing to introduce evidence the plaintiffs had in their possession during trial.

In *Turner v. Haar*, 21 S.W. 737, 737 (Mo. 1893), a plaintiff sued to recover damages for personal injuries she incurred when the factory in which she worked collapsed during a severe storm. The jury found for the plaintiff, and the circuit court entered judgment in her favor. *Id*. at 738. This Court reversed the circuit court's judgment on appeal, finding the plaintiff failed to make a submissible case of negligence against her employer. *Id*. at 739. This Court recognized that, typically in personal injury cases stemming from the collapse of a building, "the mere falling of a building, from its own weight and inherent weakness, or from the action of ordinary storms, would raise a fair presumption of its insufficiency and unfitness for use." *Id*. But the Court then explained:

> When … evidence offered by plaintiff to prove the destruction of the building also discloses the fact that the building was destroyed during the prevalence of an unprecedented storm,… [t]he prima facie case made by the falling of the house is thus rebutted by the evidence proving it, and the burden still rested upon plaintiff to show the insufficiency and unfitness of the building for the uses to which defendants applied it.

*Id*. Because the factory collapsed during an "unprecedented storm" and the plaintiff offered no proof that the building was insecure or dangerous, this Court held she failed to make a submissible case. *Id*. The Court declined, however, "to adopt … the rule commonly applied where plaintiff fails to make out his case by the evidence" and enter

20

judgment for the defendants, holding instead that remand was appropriate because "[t]he error was one of law, as to what was necessary to be proved by plaintiff." *Id.*

Similarly, in *Aiken v. Clary*, 396 S.W.2d 668, 670 (Mo. 1965), a plaintiff sued a physician to recover damages for injuries he sustained after undergoing insulin shock therapy. The plaintiff alleged the physician negligently failed to warn him of the hazards and risks of that therapy. *Id*. The jury found for the physician, and the circuit court entered judgment accordingly. *Id*. The plaintiff did not present expert medical testimony at trial as to whether a reasonable physician in similar circumstances would have disclosed the risks and hazards of insulin shock therapy. *Id*. at 676.

On appeal, this Court found the plaintiff failed to make a submissible case of medical negligence because expert medical testimony was necessary to prove the physician failed to conform to the proper standard of care. *Id*. at 675. But the Court declined to affirm the physician's verdict on that basis, finding the plaintiff justifiably relied on binding precedent that suggested expert testimony was not necessary in medical negligence cases involving the physician's duty to warn of the risks and hazards of a course of treatment. *Id*. at 676. The Court instead remanded the case for a new trial. *Id*. at 677.

This Court has also ordered remand instead of outright reversal in past cases when there has been a change in the law between the time the case was tried and the time the case was decided on appeal. Although the law of negligent credentialing did not change between the time of the Tharps' trial and this decision, these cases are nevertheless instructive because they demonstrate this Court's policy of remanding cases in which a plaintiff's verdict was reversed for reasons outside the plaintiff's control.

21

In *Warren*, a tenant sued her landlord for damages after sustaining personal injuries from falling on an icy sidewalk in her apartment complex. 950 S.W.2d at 845. The tenant's lease contained an exculpatory clause that purported to release the landlord from liability for its own negligence. *Id*. The landlord asserted the exculpatory clause as an affirmative defense in its amended answer to the tenant's petition. *Id*. The tenant neither filed a reply to the landlord's affirmative defense nor presented evidence on avoidance of the affirmative defense.[10] *Id*. at 846. A jury found in the tenant's favor. *Id*. at 845. The landlord filed a motion for JNOV, arguing the lease's exculpatory clause precluded the plaintiff's suit. *Id*. The circuit court overruled the motion, holding the exculpatory clause was void for violating public policy, and entered judgment on the jury's verdict. *Id*. The landlord appealed the circuit court's denial of its motion for JNOV. *Id*. This Court reversed, holding the circuit court erred by finding the exculpatory clause violated public policy and overruling the motion for JNOV on public policy grounds. *Id*. at 846. But instead of simply entering judgment for the landlord, the Court remanded the case for a new trial. *Id*. at 847.

While *Warren* was pending on appeal, this Court handed down its decision in *Alack v. Vic Tanny International of Missouri, Inc.*, 923 S.W.2d 330, 334 (1996), which held contracts exonerating a party from future negligent acts "are not prohibited as against public policy" so long as there is "clear and explicit language in that contract … [that]

---

[10] The Court explained, "Where a reply is required but not filed – and the defendant does not object – the case proceeds as if plaintiff made a general denial of the affirmative defense." *Warren*, 950 S.W.2d at 846. This meant that, on appeal, the Court would "review[]the case as if Warren made a reply in accordance with the evidence at trial." *Id*.

absolve[s] a person from such liability." *Alack* was not the first case from this Court to confirm that exculpatory clauses are not categorically void for violating public policy. *See Rock Springs Realty, Inc. v. Ward*, 392 S.W.2d 270, 272 (Mo. 1965). But *Alack* was the first case in which this Court expressly set out the characteristics of a valid exculpatory clause. *See* 923 S.W.2d at 337.

Based on *Alack*, which cited *Rock Springs Realty*, this Court held the circuit court in *Warren* erred by overruling the landlord's motion for JNOV based on its finding that the exculpatory clause was unenforceable. 950 S.W.2d at 845. But because *Alack* was the first case to expressly require an exculpatory clause to contain "clear, unambiguous, unmistakable, and conspicuous language in order to release a party from his or her own future negligence," 923 S.W.2d at 337, the plaintiff in *Warren* could not have known how to attempt to show the exculpatory clause in her lease was invalid. The plaintiff's failure to present evidence on that point, therefore, was justifiable, and justice required remand instead of outright reversal because the plaintiff did not have the benefit of this Court's guidance on a point that materially affected her case. *Warren*, 950 S.W.2d at 846.

In *Dietz v. Humphreys*, a woman sued her brother-in-law, claiming he wrongfully established six investment accounts on which he was named as partial owner along with his brother and sister-in-law. 507 S.W.2d at 390. The circuit court entered judgment in the plaintiff's favor, finding the defendant had no interest in the money used to fund the investment accounts and the transactions were presumptively void under the joint account statutes. *Id*. at 391. The circuit court based its ruling on this Court's two most recent cases interpreting those statutes. *Id*. at 391-92. While *Dietz* was pending on appeal, however,

23

this Court decided a case that held the prior construction of the joint account statutes – the construction applied by the circuit court – was "erroneous and has been misleading to depositors who have complied with said statutes." *Id*. at 391. This Court reversed the plaintiff's verdict but declined to finally dispose of the case, choosing instead to remand for further proceedings. *Id*. at 392. This Court reasoned "it would be improper and unfair to the parties, to decide this case on the record made when all the parties . . . were operating pursuant to the rule announced in the [older] cases." *Id*.

This Court's reasons for ordering remand in each of the above cases are not identical, but this Court applied the same principle in all four cases. The above cases demonstrate justice precludes outright reversal of a plaintiff's verdict and instead requires remand if a plaintiff's legal failure was caused not by some strategic decision, avoidable or invited error, or other intrinsic factor, but by some extrinsic factor outside the plaintiff's control. One such extrinsic factor that may justify a plaintiff's failure to introduce essential evidence is a plaintiff's ignorance of the evidence necessary to support a cause of action when no statute or binding appellate precedent has ever recognized a cause of action and set forth the evidence required to support the claim.

The Tharps' confusion as to the evidence necessary to support a negligent credentialing claim was justifiable for this reason. Although the court of appeals recognized negligent credentialing as a viable cause of action before the Tharps brought this suit against St. Luke's, the court of appeals in *LeBlanc* did not expressly hold a plaintiff must present evidence, and the jury must find, that a physician was incompetent or generally careless to prevail on a negligent credentialing claim in that case. It was not until

24

the instant case that this Court recognized negligent credentialing as a cause of action, set out the elements of a negligent credentialing claim, and explained the evidence necessary to support that claim.

When they brought their suit, the Tharps had only a handful of non-binding appellate decisions for guidance as to the essential evidence necessary to support a negligent credentialing claim, and none of those cases sets out the elements and necessary evidence this Court articulates today. The Tharps should not be punished for failing to introduce evidence when they did not have the benefit of this Court's guidance as to the evidence necessary to make a submissible case of negligent credentialing. Because the Tharps lacked clear guidance on the elements they needed to prove and the evidence they needed to present to make a submissible case of negligent credentialing, their failure to introduce evidence that would have allowed them to make a submissible case during their trial was justifiable.

Similarly to the plaintiffs in *Turner, Aiken, Warren* and *Dietz*, the Tharps lacked guidance from this Court as to the evidence required to make a submissible case of negligent credentialing. This opinion now provides the Tharps and future plaintiffs with definitive guidance on the evidence they must present and elements they must prove to create a submissible case of negligent credentialing. The Tharps possess additional, relevant evidence that would enable them to make a submissible case upon retrial, and they were justified in not presenting that evidence during their trial. It would be manifestly unfair to deny the Tharps an opportunity to attempt to correct the deficiency this Court finds in their evidence when they were unaware exactly what the law required to make a

25

submissible case of negligent credentialing. The Tharps' possession of evidence to create a submissible case upon retrial, combined with their justifiable failure to introduce such evidence during their trial, supports a finding that justice requires remand in this case.[11]

**Conclusion**

The Tharps failed to make a submissible case of negligent credentialing. The circuit court's judgment is reversed, and the case is remanded for a new trial.

_____
W. Brent Powell, Judge

Wilson, Russell, Breckenridge, Stith, and Fischer, JJ., concur;
Draper, C.J., dissents in part and concurs in part in separate opinion filed.

---

[11] In setting out the elements of a negligent credentialing claim in note 6, *supra*, this Court does not intend to suggest any particular language for the verdict director. The Court, rather, intends only to set out the ultimate facts necessary to sustain a plaintiff's verdict in a case of negligent credentialing. *Auto Handling Corp.*, 523 S.W.3d at 463. On remand, the parties and the circuit court should determine appropriate language for the instruction in accordance with general principles for drafting not-in-MAI instructions.



# SUPREME COURT OF MISSOURI
## en banc

THOMAS E. THARP, *et al.*,     )
                               )
     Appellants/Cross-Respondents,    )
                               )
v.                               )     No. SC96528
                               )
ST. LUKE'S SURGICENTER-      )
LEE'S SUMMIT, LLC,          )
                               )
     Respondent/Cross-Appellant.    )

### OPINION DISSENTING IN PART AND CONCURRING IN PART

While the principal opinion would make a persuasive closing argument at trial on behalf of St. Luke's Surgicenter-Lee's Summit, LLC (hereinafter, "St. Luke's"), I believe the principal opinion reaches beyond the standard of review to overturn the jury's verdict. I disagree with its analysis overturning the jury's verdict; therefore, I dissent from that portion of the opinion. However, because I maintain Thomas E. Tharp and Paula M. Tharp (hereinafter, "the Tharps") have a claim of negligent credentialing, I concur with the ultimate result of the principal opinion which does not deny the Tharps the opportunity to present their evidence to a jury.

St. Luke's challenges the circuit court's judgment overruling its post-trial motion for judgment notwithstanding the verdict (hereinafter, "JNOV"). The standard of review

1

of the denial of a JNOV is essentially the same as the overruling of a motion for directed verdict. *Klotz v. St. Anthony's Med. Ctr.*, 311 S.W.3d 752, 769 (Mo. banc 2010). "A case may not be submitted unless each and every fact essential to liability is predicated on legal and substantial evidence." *Moore v. Ford Motor Co.*, 332 S.W.3d 749, 756 (Mo. banc 2011) (quoting *Investors Title Co. v. Hammonds*, 217 S.W.3d 288, 299 (Mo. banc 2007)). To determine whether the evidence was sufficient to support the jury's verdict, an appellate court views the evidence in the light most favorable to the verdict and the plaintiff is given the benefit of *all* reasonable inferences. *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. banc 2010). This Court will reverse a jury's verdict for insufficient evidence only when there is a complete absence of probative fact to support the jury's conclusion. *Klotz,* 311 S.W.3d at 769.

The principal opinion finds the Tharps' negligent credentialing claim was insufficient as a matter of law because they failed to present evidence showing Mr. Tharp's surgeon was incompetent generally. Demonstrating Mr. Tharp's surgeon was incompetent generally was not required, as in fact, the primary question to be established by the evidence and put to the jury was, and is, whether the hospital sufficiently investigated and acted upon any indication of incompetency. *See Larson v. Wasemiller*, 738 N.W.2d 300, 306-09 (Minn. 2007); *Frigo v. Silver Cross Hosp. & Med. Ctr.*, 377 Ill. App. 3d 43, 72 (2007). Therefore, this assertion by the principal opinion mischaracterizes the evidence presented to the jury.

The Tharps presented the expert testimony of a professor of health care administration, specializing in health care credentialing, and a medical doctor,

2

specializing in hepatobiliary and pancreas surgery.[1]  The health care administration

expert found St. Luke's fell "*very much below*" the standard of care in credentialing

Mr. Tharp's surgeon.  (Emphasis added).  Specifically, the expert testified about records

of other surgeries Mr. Tharp's surgeon conducted that should have been included in his

credentialing application but were not.  The expert further testified about the

circumstances surrounding some of those omitted surgeries, including one wherein the

twenty-two year old female patient died.  Additionally, the medical doctor opined Mr.

Tharp's surgeon fell below the standard of care in Mr. Tharp's surgery.

It "is the responsibility of the jury, not the court, 'to determine the credibility of

witnesses, resolve conflicts in testimony, and weigh evidence.'"  *Cox v. Kan. City Chiefs

Football Club, Inc.*, 473 S.W.3d 107, 126 (Mo. banc 2015) (quoting *State v. Letica*, 356

S.W.3d 157, 167 (Mo. banc 2011)).  "The jury is the sole judge of the credibility of

witnesses," and, as this Court has recently become fond of reiterating, it is free to believe

or disbelieve any, all, or none of a witness's testimony.  *Keveney*, 304 S.W.3d at 105

(quoting *Altenhofen v. Fabricor, Inc.*, 81 S.W.3d 578, 584 (Mo. App. W.D. 2002)).

Contrary to the principal opinion, the jury was presented evidence that

Mr. Tharp's surgeon was incompetent generally and incompetent in this case specifically,

hence supporting the Tharps' claims.  Because there was not a complete absence of

probative fact to support the jury's conclusion, as demanded by this Court's standard of

review, I would affirm the circuit court's denial of St. Luke's motion for JNOV.  While

---

[1] This is surgery on the gallbladder, liver, and pancreas.

my colleagues do not agree with my view of the evidence, I will concur in their ultimate decision to allow the Tharps to pursue their claim of negligent credentialing.

                _____

                GEORGE W. DRAPER III, JUDGE